# BOARD OF COMMISSIONERS OF MEAGHER COUNTY, RESPONDENT, *v.* GARDNER, COUNTY ASSESSOR, ET AL., APPELLANTS.

[Submitted March 24, 1896. Decided March 30, 1896.]

COUNTY ASSESSOR—*Poor tax.*—Section 1790, Fifth Division of the Compiled Statutes (1887) making it the duty of the county assessor to collect the poor tax, providing for the manner of collection and creating a liability on the officer's official bond for the money so collected, was a law of the territory upon the admission of the state and had not been repealed by prior amendatory and repealing acts.

SAME—*Official bond—Liability of sureties.*—Where a former statute providing for the collection of poor taxes by the county assessor also provided that he should be liable on his official bond for the money so collected, was practically reenacted in a subsequent act, with the exception of the provision in respect to liability on his bond, this omission does not release his official sureties from liability for taxes collected and embezzled by him subsequent to such reenactment, where the condition of the bond was that the assessor would pay over all moneys coming into his hands as such officer.

SAME—*Official bond—Sureties—Estoppel—Constitutional law.*— Sureties upon the official bond of a county assessor, upon whom was imposed by statute the duty of collecting poor taxes, and whose bond was conditioned that he would pay over the moneys so collected, are estopped from contending that the statute imposing such duty is in conflict with section 5, Article VI of the constitution, which provides that the county treasurer shall be collector of taxes.

*Appeal from Sixth Judicial District, Meagher County.*

ACTION on official bond of county assessor. Defendant's demurrer to the complaint was overruled by HENRY, J., and judgment entered for plaintiff. Affirmed.

Statement of the case by the justice delivering the opinion.

This is an appeal by the defendants from a judgment entered against them upon the overruling of their demurrer to the complaint. The question therefore is, does the complaint state a cause of action ?

Defendant Gardner was assessor of Meagher county. Defendants Moore and Anderson were sureties on his official bond. Gardner's term of office commenced November 8, 1889, and ended January 2, 1893. The complaint sets up the facts of his election and qualification, and the giving of his bond for $2,000, with the following condition :

"Now, therefore, if the said Ben D. Gardner shall faithfully and impartially discharge the duties of his said office of assessor, and render a true account of all moneys, credits, accounts and property of any kind that shall come into his hands as such officer, and pay over and deliver the same according to law, then the above obligation is void; otherwise to remain in full force and virtue."

This bond was duly approved and accepted. Part of his duties was to collect the poor tax, of $2 per caput. Between March 6, 1891, and January, 1893, said Gardner, as assessor, collected and retained said poor tax, in a sum exceeding $2,000. This amount he wholly failed to account for, or pay over to the treasurer of the county, but, on the other hand, converted and embezzled the same. The amount of his official bond has been demanded by plaintiff from the defendants, and the same has not been paid.

The demurrer was upon the ground that the complaint did not set forth facts sufficient to constitute a cause of action. No service was made upon the defendant Gardner, and no appearance was made in his behalf. The sureties alone are defending this action.

*Smith & Gormley*, for Appellant.

I. At the time the bond was executed there was no statute making it the duty of the assessor to collect the poor or poll

tax.  Section 1790, page 1149, Compiled Statutes (Act of March 12, 1885) was an amendment of Section 1021, Chapter 53, Revised Statutes, and was repealed by the act of September 14, 1887, which repealed all of Chapter 53 of the Revised Statutes, and the assessor was not required to collect the poor tax or any other tax.

II.  Even if there was a statute in existence requiring the assessor to collect the poor tax at the time the bond was given, it was repealed by article XVI, section 5 of the constitution which provides that the county treasurer "shall be collector of taxes."

III.  The duty of collecting the poll tax, which is the subject of the breach complained of, was imposed upon the assessor by the act of March 6, 1891.  By this act a new duty was imposed upon that officer of an entirely different nature and character from the duties required of him at the time he took the oath of office and executed his bond.  Where, after an official bond is given, new duties are added that differ from the former ones, not in degree, but in kind and character, then the bondsmen are not liable for a failure on the part of the officer to perform the superadded duties.  (Murfree on Official Bonds, §§ 193, 646-50, 711-714; *Territory* v. *Carson*, 7 Mont. 417; *White* v. *East Saginaw* (Mich.), 6 N. W. Rep. 86; *United States* v. *Singer*, 15 Wall 122; *People* v. *Edwards*, 9 Cal. 286; *People* v. *Ross*, 38 Cal. 76; *Love* v. *Baehr*, 47 Cal. 364; *Cosman* v. *Nightingill*, 1 Nev. 274.)  The offices of assessor and treasurer are constitutional offices, and the duties that pertain to them should be construed in the light of the constitution.  As the constitution declares that the treasurer shall be the collector of taxes, the duty of collecting taxes is therefore foreign to the office of assessor.  (*Love* v. *Baehr*, 47 Cal. 364.)

IV.  Appellants claim further, however, that the act of March 6, 1891, was unconstitutional because it took away from the county treasurer a duty imposed upon him by the constitution, viz., the collecting of taxes.  If the legislature can take away part of the duties of a constitutional officer, it

can take away all the duties and thereby abolish the office. (§ 5, Article XVI, Constitution of Montana.)

V.   Section 1790 provides, among other things :   "The assessor shall be liable on his official bond for the nonperformance of his duties in collecting said poor tax, and for money collected therefor by him," and the board of county commissioners is authorized to require him to give additional bond for such purpose.   Subsequently and prior to the collection of the moneys described in the complaint, on March 6, 1891, the legislature enacted the general revenue law of that year, and in that act provided for a per capita tax to be known as a "poll tax," the proceeds of which were to be paid into the county treasury for the exclusive use of the "poor fund" of the county. (Laws 1891, pp. 122-125, §§ 163-182.)   A careful reading of the law shows that it was meant to be a substitute for the section above quoted relative to the "poor tax."   Where the statute is evidently intended to revise the whole subject treated in a former statute and to be a substitute therefor, it repeals such former statute, and all omitted parts. (*Clay County* v. *Chickasaw County* (Mich.), 1 So. Rep. 753; *Treadwell* v. *Yolo County*, 62 Cal. 563.)   The legislature of 1885 undoubtedly recognized that the duty of collecting poor tax was not one for which the assessor was liable on his official bond; otherwise it would not have provided that he and his bondsmen should be liable for money collected.   A repeal of that part of the law which made the assessor and his bondsmen liable showed the intent of the legislature to be that the assessor should not be liable on his official bond as assessor for a failure to perform the duty of collecting and paying over money collected as assessor.   (Sutherland on Statutory Construction; §§ 137 and 168; *White* v. *East Saginaw*, 6 N. W. Rep. 86.)          •

*Henri J. Haskell*, Attorney General, *Powell Black*, County Attorney, *Max Waterman* and *L. L. Callaway*, for Respondent.

The only money Gardner could receive as assessor was the

"poor tax," or as designated in the law of 1891, "poll tax."
The provision in the bond requiring Gardner to account for
all moneys, etc., clearly shows that it was signed by the sure-
ties with the understanding on their part that Gardner was re-
quired and authorized by law to collect the "poor tax," and
that section 1790 of the Compiled Statutes was in force and
their bond enabled Gardner to collect such tax and was given
for that purpose and they understood that he would account
for money so received by him.   As the sureties, by the con-
ditions in the bond, recognized the existence and validity of
the law requiring Gardner, as assessor, to collect the "poor
tax" and undertook that he should account for money so col-
lected, they are estopped from claiming that such law was re-
pealed by the legislative enactment or by the constitution and
not in force when the bond was given, or from claiming that
the act of 1891, requiring the assessor to collect the same tax
designated as "poll tax" is unconstitutional, or from claim-
ing that Gardner, as assessor, was unauthorized to collect such
tax.   (*Middleton* v. *State* (Ind.), 23 N. E. 123; *People* v.
*Gillespie*, 47 Ill. App. 522, 534, and cases cited therein;
Cooley on Constitutional Limitation, page 219; *Illinois Cen-
tral Ry. Co.* v. *King* (Miss.), 13 So. 324.)   The bond given
in this case is broader and more comprehensive than the bond
required by the statute and its conditions require Gardner to
account for all money that should come into his hands as as-
sessor.   It is of no importance whether he was required to
give such a bond by law or not.   Such a bond was given in
this case.   "It needs no statute to enable an officer to give a
valid bond to perform a duty."   (Sutherland on Statutory
Construction, § 459.)   Bondsmen are presumed to contract
with knowledge of existing laws and the right of the legisla-
ture to increase the duties of their principal, if germane to his
office.   (*Territory* v. *Carson*, 7 Mont. 417; *Evans* v. *City of*
*Trenton*, 24 N. J. Law 764.)   The bond in suit will be pre-
sumed to have been executed in view of the statute in relation
to the collection of taxes by the assessor which existed at the
time it was executed.   "These laws entered into and formed

a part of the contract. When a subsequent statute simply affects the duties to be performed by a public officer, not as to the kind of duties, but in their degree, no matter to what extent, the sureties upon his bond, so far as this question is concerned, will be held liable." (*United States* v. *Singer*, 15 Wall. 111; *People* v. *Vilas*, 36 N. Y. 459; *United States* v. *McCartney*, 1 Fed. 104.)

De Witt, J.—In favor of the demurrer, appellants present three questions: First, that at the time the bond was executed there was no statute making it the duty of the assessor to collect the poor tax, and, if it were not the duty of his office, the bondsmen were not liable; second, that if such statute did exist at the time of making the bond, it was repealed by the act of the legislature of March 6, 1891, —a date prior to the collection and alleged embezzlement of the funds; third, that if at the time the bond was given, or the collections were made by the assessor, there was a law on the statute book making it the duty of the assessor to collect the poor tax, such a law was unconstitutional, for the reason that the constitution, in article XVI, § 5, provides that the county treasurer shall be collector of taxes. We will take up these questions in their order.

1. Gardner, the assessor, took office and filed his bond on November 8, 1889,—the day on which this state was admitted into the Union. The laws of the territory were, by the constitution, made the laws of the state, except where in conflict with the constitution. Upon the admission of the state there was upon the statute book section 1790, div. 5, Comp. St. 1887. That section provided for the levy of a poor tax of two dollars *per caput*. It made it the duty of the assessor to collect this tax in money. It provided somewhat in detail for the manner of the collection, and for the issuing of receipts, and making returns of the money and accounts. That statute also further provided that the assessor should be liable on his official bond for the nonperformance of his duties in collecting said poor tax, and for the money collected therefor by him.

Counsel contends that, while this section of the law was upon the statute book, it in fact was not a law of the territory at that time.   He bases this contention upon a review of the history of the subject-matter of this section.   He traces the section from 1873 down to September 14, 1887.   He claims that by various amendatory and repealing acts, this section 1790 had ceased to be a law, and was by a mistake written in the compilation.   We have followed counsel through the whole history of this section, and, after a careful and tedious examination, have concluded that the section was a law of the territory upon the coming in of the state.   It does not seem to be profitable to recite this history, for it would not be a precedent in the future, as the question is not likely to arise again. The practice in collecting these taxes is now regulated by legislation passed in 1895.   Therefore appellants' first point is not well taken.

2.  By an act approved March 6, 1891, the legislature provided a new revenue law, including the matter of the poor tax, and the collection thereof by the assessor.   The provisions of section 1790 of the Compiled Statutes of 1887 were practically re-enacted, except that the new law did not provide that the assessor should be liable on his official bond for the nonperformance of his official duties in collecting the poor tax. As all of the collections which it is alleged this assessor embezzled were made after the passage of the act of March 6, 1891, appellants argue that there was no provision making the assessor's bond liable for his embezzlements; and furthermore that the provision of the law of 1891, requiring the assessor to collect the poor tax, was passed after the bond was given, and therefore imposed a new and different duty upon the assessor, for the performance of which the sureties had not agreed to be liable.   But the act of 1891 did not impose any duty upon the assessor which was not already imposed by section 1790, *supra*, when the bond was given.   Under section 1790 it was the assessor's duty to collect the poor tax, and that duty, instead of being changed by the law of 1891, was continued as it was before.   The condition of the bond was that the as-

sessor will render a true account of all moneys, credits, ac-
accounts and property of any kind that shall come into his
hands as such officer, and pay over the same, etc.    Instead of
the law of 1891 imposing any new duties which were not
within the contemplation of the bondsmen, it simply continued
the old duties in reference to which the bondsmen had already
contracted.    The fact that the new law of 1891 did not state
as did the section 1790 of the old law, that the bond of the as-
sessor should be liable for the poor taxes not paid over, is not
important.    The law of 1891 probably omitted that clause be-
cause it was immaterial.    The bond required to be given, and
in fact given, as noted above, is to the effect that the assessor
will pay over moneys so collected.    The law requiring that
such bond should be given, it would be superfluous to restate
in another section of the statute the same matter theretofore
provided for.    We are therefore of opinion that appellants'
second position is not sustainable.

3.    The appellants contend that it was not the duty, and
could not by statute be made the duty, of the assessor to col-
lect the poor tax, because article XVI, section 5 of the con-
stitution provides that in each county there shall be one treas-
urer, who shall be collector of taxes.    But we are of opinion
that the bondsmen here are estopped from questioning the
constitutionality of the act of the legislature in this proceed-
ing.

In a case similar to this, viz., *Mayor, etc.,* v. *Harrison,* 30
N. J. Law 73, the court said:    "By the condition of this
bond it is recited that, whereas the said William R. Harrison
had been duly appointed by the mayor and common council of
the city of Hoboken as collector of assessments for street im-
provements, that if he should well and truly pay to the treas-
urer of said city all moneys which he might collect or receive
as such collector, etc.    By this condition the sureties have ad-
mitted that his election was by the mayor and common coun-
cil, and agreed to be sureties for the payment of all moneys
which, by virtue of the appointment thus made, he might re-
ceive.    They are estopped from denying that Harrison was *de*

*facto* a collector of assessments for street improvements. Their liability to pay over what he has collected is coextensive with his. In a suit for moneys collected by him as such, neither the officer *de facto*, nor his sureties, may set up the invalidity of his appointment in bar of this action.    \*    \*    \* It would seem to be eminently impolitic to permit the parties to such a bond to escape its obligations by contradicting the recitals of the bond and thus retain from the public authorities the taxes received by an officer *de facto.*"

This opinion is cited with approval and followed in a similar case,—*Middleton* v. *State*, 120 Ind. 166, 22 N. E. 123. To the same effect is *People* v. *Gillespie*, 47 Ill. App. 522, in which the court says: "He and his sureties cannot be heard to say that the levy was not properly made, or the tax collected without proper authority. He collected and received it by virtue of his office; and it was his duty to report and account for the same, and charge it to himself as treasurer. In *People* v. *Hoover*, 92 Ill. 575, it was held, when a treasurer in counties under township organization receives taxes belonging to the county, he will be considered as holding the same as collector until he reports them to the county clerk, as required by section 120 of the revenue act, and his sureties are liable. The bond of collector secures the performance of duties not covered by his bond as treasurer." See, also cases cited in that opinion. See, also, *Mayor, etc., of City of New York* v. *Manhattan Ry. Co.*, 143 N. Y. 1, 37 N. E. 494. *Railroad Co.* v. *King*, 69 Miss. 852, 13 South. 824; Cooley on Constitutional Limitation, page 181.

We are therefore of opinion that the demurrer was properly overruled, and that the judgment must therefore be affirmed.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.