THE STATE ex rel. W. E. WILES, Appellant, v. SAMUEL H. WILLIAMS.

**In Banc, December 31, 1910.**

1. **CONSTITUTIONALITY OF STATUTE: Raised by Ministerial Officer.** Ordinarily a ministerial officer, such as a county treasurer, whose duties are purely ministerial, has no right to refuse to perform that duty on the ground that the statute creating a right or the duty, is unconstitutional; nor has he the right, of his own motion, when sued on a warrant which he has declined to pay, to defend on the ground that the statute, authorizing the issuance of the warrant, is unconstitutional. But when he has been advised by the Attorney-General that such statute is void, and directed by the county court not to pay said warrant, he does have the right on being sued on the warrant, to interpose the defense that the statute is unconstitutional and void.

2. **CONSTITUTIONAL LAW: Special Law: Applicable to Only One County.** An act providing that "in all counties whose population, as ascertained by the United States census of 1900, is 32,000 inhabitants or over and less than 50,000 inhabitants, all prosecuting attorneys shall receive a salary of $2500 per annum, and no other remuneration whatever," is a special and local law, and unconstitutional. It can apply only to the counties which on the day of its enactment had the requisite population.

3. ————: ————: ————: **General Law Applicable.** Said act is also unconstitutional because a general law on the subject could have been enacted, whereas it applies only to the counties which at the time of its enactment had the requisite population.

4. ————: **Two Subjects: Creating Office and Fixing Salaries.** An act amending a statute and so changing it that a county officer's compensation is changed from fees and a salary to a larger salary only, is not unconstitutional as embracing two

subjects, because it gives him a salary but no fees, and creates an assistant and fixes his compensation at a definite salary. The matters are germane and congruous.

5. ————: **Uniform in Operation: Salaries of County Officers.** A statute fixing the compensation of prosecuting attorneys at a definite salary, in lieu of fees and a smaller salary, in all counties having a named population, is not violative of that part of the Constitution providing that "the General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population." Even though the law is special and local, it is uniform in its operation upon all matters and things embraced within its provisions.

Appeal from Nodaway Circuit Court.—*Hon. Alvin Bingaman*, Special Judge.

AFFIRMED.

*L. C. Cook, W. H. Crawford, W. W. Ramsay* and *W. E. Wiles* for appellant.

*A. F. Harvey* and *T. A. Cummins* for respondent.

WOODSON, J.—This is a petition for mandamus, instituted by the relator as prosecuting attorney of Nodaway county against the respondent, as treasurer thereof, seeking to compel the latter to pay a warrant for $208.33, drawn by the clerk of the circuit court of said county in favor of the former for his salary as such attorney for the month of April, 1909, as provided for by the Act of March 29, 1907, Laws 1907, p. 274. An alternative writ of mandamus was issued by the circuit court, and in due time the respondent filed his return thereto. A trial was had before a special judge, selected according to law, which resulted in a finding for respondent and a judgment denying the peremptory writ. From that judgment the relator appealed.

The legal propositions presented for adjudication will better appear by a presentation of the alternative writ, and the respondent's return thereto. The former reads as follows (formal parts omitted):

"To Samuel H. Williams, Treasurer of Nodaway County, Greeting:

"Whereas, It has been represented to the judge of the circuit court of Nodaway county, in the State of Missouri, by the petition of W. E. Wiles, as follows, to-wit:

"Your petitioner, W. E. Wiles, respectfully represents that he is the duly elected, qualified and acting prosecuting attorney, within and for the county of Nodaway and State of Missouri; that on the 1st day of January, 1909, he entered upon the duties of said office and has ever since and to this date has performed the duties and services of such officer; that he was elected to said office on the 3d day of November, 1908, and duly commissioned by the Governor of said State to hold said office for a period of two years, beginning on the first day of January, 1909.

"Your petitioner further represents that Eugene Rathbun and Samuel H. Williams are respectively the duly elected, qualified and acting clerk of the circuit court, and treasurer of said Nodaway county.

"Your petitioner further states that under and by the provisions of the law of the State of Missouri, as contained in sections numbered 3237 and 4949, Revised Statutes of 1899, and section numbered 3237a, Laws of 1907, page 274, the salary of the prosecuting attorney in all counties in said State, having a population of 32,-000 or over and less than 50,000 inhabitants, as ascertained by the United States census of 1900, is fixed at $2500 per year, to be paid monthly by warrants drawn by the circuit clerk upon the county treasurer; that said Nodaway county has a population of more than 32,000 inhabitants and less than 50,000 inhabitants, as is required by the aforesaid sections, and your petitioner as such prosecuting attorney is entitled thereunder to the sum of $2500 per year as his salary for the performance of the duties of his said office.

"Your petitioner further represents that on the

1st day of May, 1909, he filed with the said Eugene Rathbun, circuit clerk as aforesaid, a statement showing the amount due him as his salary aforesaid for the month of April, 1909; that thereupon the said Eugene Rathbun, as said circuit clerk, issued and delivered to petitioner a warrant drawn on the treasurer of said county in the sum of $208.33, the same being the amount due petitioner as his salary for said month of April, and which said warrant is in words and figures as follows:

No. 4. $208.33.  Treasurer of Nodaway County, Missouri. Pay to W. E. Wiles, two hundred eight and 33/100 dollars. For one month's salary as prosecuting attorney from April 1, 1909, to May, 1909.  Out of money in the treasury appropriated for Salary Fund.  Given at my office in Maryville, Missouri, this first day of May, 1909.
(Seal)                    EUGENE RATHBUN, Circuit Clerk.

"Your petitioner further presents that on the 3d day of May, 1909, he presented said warrant to the said Samuel H. Williams, in the office of the said treasurer, and demanded of the said Samuel H. Williams, as treasurer aforesaid, the payment thereof; but that the said Samuel H. Williams, as such treasurer, refused to pay the same or any part thereof to petitioner; that at the time petitioner presented said warrant to said treasurer as aforesaid, there was and now is in said treasury in the keeping of said treasurer sufficient money belonging to said county and duly appropriated to the salary fund, to pay said warrant; that said Williams refused to pay said warrant and declares an intention to continue to refuse to pay the same, so that petitioner has been and is unable to secure his aforesaid salary for the said month of April, as is justly due him and evidenced by said warrant.

"Your petitioner further states that he is remediless in the premises by or through ordinary process of proceedings at law.

"The judge of said court, being willing that due and speedy justice be done to the said W. E. Wiles in this behalf, commands you that immediately after the receipt of this writ you do, without further excuse or delay, upon the presentation of the aforesaid warrant, pay the same to the said W. E. Wiles, in full amount as is represented by the said warrant, or show cause before the circuit court of Nodaway county, Missouri, held at Maryville in said county on Monday, the 21st day of June, next ensuing, why you should not do so.

"Herein fail not at your peril, and have you then and there this writ."

The return of respondent is as follows (formal parts omitted):

"Comes now Samuel H. Williams and for return to the alternative writ of mandamus issued in the above entitled cause, says that said writ should not be awarded against him for the following reasons:

"1st. Respondent denies that he is now or was at any time the county treasurer of Nodaway county, but avers that he is now and has since April 1, 1909, been the duly elected, qualified and acting county treasurer and *ex-officio* collector of the revenue in and for said Nodaway county, which office respondent says is another and different office to that of county treasurer; that Nodaway county is now and was at all times hereinafter mentioned under and governed by chapter 168 of the Revised Statutes of Missouri of 1899, known as the township organization laws, which was on the —— day of November, 1906, adopted in said county.

"2d. Respondent says that relator is now and has been since January 1, 1909, the duly elected, qualified and acting prosecuting attorney in and for said county, having been elected in November, 1906, and that Eugene Rathbun is the clerk of the circuit court of said county, and that Nodaway county had a population of more than 32,000 and less than 50,000 according to the United States census of 1900; that on the 3d day

of May, 1909, relator presented to said Samuel H. Williams a purported warrant for the sum of $208.33, alleging on its face to be the salary of the prosecuting attorney from April 1, 1909, to May 1, 1909, which purported warrant was dated May 1, 1909, requesting said treasurer to pay to relator out of the salary fund of said Nodaway county said sum, and was signed by Eugene Rathbun, circuit clerk, and that payment thereof was refused.

"3d. Respondent denies that under the provisions of sections 3237 and 4949, 3237a, Laws of 1907, page 274, or under any other sections or any law or statute of the State of Missouri, the relator as such prosecuting attorney is entitled to a salary of $2500 per annum, or that the same should be paid monthly by warrants drawn on the county treasurer or any other person, or drawn by the circuit clerk of said county or any other person, or paid monthly or at any other time.

"4th. Respondent denies that there was in the treasury of said county on said 3d day of May, 1909, or at any time, any money or funds whatever subject to or which had been lawfully appropriated for the payment of the alleged warrant aforesaid or any money or funds of said Nodaway county in his possession or control which could be lawfully used for such purpose.

"5th. Respondent says that as such county treasurer and *ex-officio* county collector of said Nodaway county he has in his charge, possession and control the moneys and funds belonging to and the property of said county collected by taxation from its taxpayers; that he holds and retains the same and pays out said funds as the agent and trustee of said county and its taxpayers, and as such officer he has no right and is not permitted by law to pay out or disburse any of said money or funds to any person or for any purpose except upon an order of record of the county court first had and obtained, and upon a warrant therefor drawn and signed by the presiding judge and clerk of said

county court and in the manner and form provided by article 4, chapter 97, of the Revised Statutes of 1899.

"6th. Respondent further says that the county court of said county by its order of record duly made on April 26, 1909, ordered and directed this respondent not to pay any warrant drawn by said Eugene Rathbun out of any fund belonging to said Nodaway county, which order is in words and figures as follows:

Whereas, the Attorney-General of this State has advised this court, and this court after due consideration has found and adjudged, that the act of the General Assembly of Missouri, approved March 29, 1907, entitled, Fees—Prosecuting Attorneys, found on page 274 of the Laws of Missouri of 1907, is void, unconstitutional and of no effect, it is therefore ordered and adjudged by the court that no money or funds belonging to said Nodaway county be used or appropriated in payment of any warrant or order drawn upon the county or treasurer thereof, and it is further ordered and adjudged that the county treasurer and *ex-officio* county collector of said Nodaway county, Samuel H. Williams, be not allowed credit on his accounts with said Nodaway county for any money used or paid upon any warrant or order issued, drawn or paid under or by virtue of said act of the General Assembly above mentioned, and that the said Samuel H. Williams be held upon his official bond for any and all moneys or funds of the said county used or paid out by him or by any one for or under him, under, by virtue of and in pursuance of said above mentioned act or purported law; that said Samuel H. Williams be served with a copy of this order issued under the hand and seal of this court.

"Which said order is valid and binding upon this respondent.

"7th. Respondent further says that the purported warrant to the said Wiles before described is issued, drawn, presented and payment thereunder claimed out of the revenue funds of said county solely upon and by virtue of section 3237a, Laws of Missouri, 1907, page 274, which said act aforesaid is unconstitutional, illegal and void and of no effect, and is no right or authority whatever authorizing or justifying and does not permit respondent to pay out to any one, or use or consume any of the revenue funds or moneys belonging to

said county; that the subject-matter of said act is not clearly expressed in the title, and the title thereto is not broad enough to embrace the subject-matter in the body of said act, and is in violation of section 28 of article 4 of the Constitution of the State of Missouri; that said act contains more than one subject, namely, the salary of the prosecuting attorney, the subject of fees, and the creation of another office of the State, an assistant prosecuting attorney, and also providing his salary, all of which is in violation of section 28 of article 4 of the Constitution of the State of Missouri; that said act is in violation of section 12 of article 9 of the Constitution of the State of Missouri in that it is not uniform in its operation; that said act is in violation of section 53 of article 4 of the Constitution of the State of Missouri, in that it is local and special, does not apply to all localities of any one general class, either at the present time or at the time when the same was enacted, and makes no provisions for counties that may hereafter have the population it prescribes, and no provision for counties that had the population it prescribes at the time it was enacted.

"8th. Respondent says that relator has since January 1, 1909, claimed, received and collected fees under section 3237 of the Revised Statutes of 1899, which are taxed as costs in criminal prosecutions instituted since said 1st day of January, 1909, and is thereby estopped to claim under said section 3237a.

"9th. Respondent further states that by reason of the premises aforesaid the said purported warrant is illegal, void and of no force or effect, and that it is in violation of respondent's duties as such officer in charge of the public revenue funds of said county as aforesaid to pay said illegal warrant and thereby withdraw from the treasury of said county the public funds, wherewith he stands charged as aforesaid; that the same would be in violation of his oath of office and a breach of his official bond as custodian of said county

funds; that the said Eugene Rathbun has no legal power or authority to sign or issue said purported warrant, and the said relator has no legal right or authority to receive the same, or demand payment of the same or to receive or claim out of the county treasury of said county any of the county revenue funds thereon."

To this return relator filed a reply, which in legal effect was a general denial of the new matters stated in the return.

The relator and respondent, respectively, introduced evidence tending to prove the allegations of the alternative writ and those of the return.

I. The facts of this case are practically undisputed, and the only matters presented by this record for determination are propositions of law, namely: First, can a ministerial officer raise the constitutionality of a statute requiring him to perform a ministerial duty by refusing to obey the statute? and, second, is the act of March 29, 1907, Laws 1907, page 274, constitutional? We will consider those propositions in the order stated.

As regards the first, there can be no question but what the duties of the respondent under the laws of this State are purely ministerial. [State ex rel. v. Adams, 161 Mo. 349; State ex rel. v. Meier, 143 Mo. l. c. 447; State ex rel. v. Haynes, 72 Mo. 378.]

This being true, then recurring to the question, can the respondent raise the constitutionality of the act mentioned? That question, where the point has been raised, has been answered in the negative by the overwhelming weight of authority in this State, and elsewhere.

Judge WAGNER, in the case of State v. Douglass, 50 Mo. l. c. 597, said: "Every law of the Legislature, however repugnant to the Constitution, has not only the appearance and semblance of authority, but the

force of law.  It cannot be questioned at the bar of private judgment, and, if thought unconstitutional, resisted; but must be received and obeyed as, to all in tents and purposes, law, until questioned in, and set aside by the courts."

And Judge Burgess, in State v. Seebold, 192 Mo. l. c. 731, in speaking for this Court in Banc, said: "Nor will a court listen to an objection made to the constitutionality of an act of the Legislature, by a party whose rights it does not specially affect.  An act of the Legislature will be assumed to be valid, until some one complains whose rights it invades; and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void, as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained."

The language above used was taken from Jones v. Black, 48 Ala. 540, cited Shehane v. Bailey, 110 Ala. 308, to support it, declared it to be the law of this State, and added, "Only such persons as are in some way prejudiced by an unconstitutional law can complain of it."  To the same effect are Commonwealth v. Wright, 79 Ky. 22; State ex rel. v. Currens, 111 Wis. 431.

In the Seebold case, the defendant had been indicted for selling liquor in violation of the excise law; and, in discussing that question, Judge Burgess further said:  "The defendant is in no position to raise objection, and will not be heard to question the constitutionality of the excise law, because, in the first place, the revocation of such license is not punishment within the meaning of the law, and, because, in the second place, his personal or property rights were not affected by the act of the excise commissioner in revoking his license, and he has, therefore, no interest in defeating the law.  The statute is assumed to be valid until some

one complains whose rights it invades. Prima facie, and upon the face of the act itself, nothing will generally appear to show that the act is not valid; and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void, as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained. Respect for the Legislature, therefore, concurs with well-established principles of law in the conclusion that such an act is not void, but voidable only; and it follows, as a necessary legal inference from this position, that this ground of avoidance can be taken advantage of by those only who have a right to question the validity of the act, and not by strangers.'' See also Cooley's Constitutional Limitations (7 Ed.), p. 232; Cunningham v. Railroad, 165 Mo. 270; State v. Hathaway, 106 Mo. 236.

The same conclusions have been reached by the courts of many of our sister States, as well as by the courts of the United States.

In Commonwealth ex rel. v. James, 135 Pa. St. 480, it is said: ''It is too plain for argument that the appellant, who is the clerk of the court of quarter sessions of Luzerne county, had no right to decline to receive and record the resolutions of the school boards of Wilkes-Barre, accepting the provisions of the act of May 23, 1889. The act referred to requires him to receive and record these papers; his duties are purely ministerial, and the court below properly awarded the peremptory mandamus. It is but just to say that his act in refusing does not appear to have been one of insubordination, but was intended to test the constitutionality of the said Act of 1889. We are of opinion that the constitutional question cannot be raised in this way. The order of the court below is affirmed.''

In Friedman v. Horning, 128 Mich. 606, the board of supervisors of the county had issued a warrant to

one of its members, in payment for official services. The treasurer refused to pay the warrant, on the ground that Friedman was not a legal supervisor, and that the board had no authority to issue him a warrant. Mandamus being brought to compel payment, the Supreme Court of Michigan said: "The board recognized Mr. Friedman as a *de facto* officer, and allowed his account. It was not for the county treasurer, a ministerial officer, to say he was not a *de jure* officer, and that the action of the board was illegal. If he could do that in this case, he could say, when an order was presented to him which was issued to pay the bill of a constable, that the constable had not performed the service, and the action of the board was illegal in allowing his claim, and therefore he would not pay it. It can easily be seen how unseemly such a result would be. Upon the refusal of the treasurer to pay this order, the aid of the circuit judge was invoked. He issued the writ, directing payment, and his action is affirmed."

In State ex rel. v. Heard, 47 La. Ann. 1679, mandamus was brought to compel the State Auditor to issue, and the Treasurer to pay certain warrants. These officers had refused, on the ground that the legislative act authorizing such issue and payment was unconstitutional. The proposition was there made that these officers could not raise the constitutionality of the act by refusing to obey it. The authorities were reviewed from many of the States, and the court stated its conclusion in the following language: "In mandamus proceedings against a public officer, involving the performance of official duty, nothing can be inquired into but the question of duty on the face of the statute, and the ministerial character of the duty he is charged to perform. After a careful investigation of the authorities, we feel fully confirmed in the correctness of the conclusions we arrived at in Nicholls v. Shakspeare, and other cases, to the effect that the executive officers of the State government have no authority

to decline the performance of purely ministerial duties which are imposed upon them by a law, on the ground that it contravenes the Constitution. Laws are presumed to be and must be treated and acted upon by subordinate executive functionaries as constitutional and legal, until their unconstitutionality or illegality has been judicially established, for, in all well-regulated government, obedience to its laws by executive officers is absolutely essential, and of paramount importance. Were it not so, the most inextricable confusion would inevitably result, and 'produce such collisions in the administration of public affairs as to materially impede the proper and necessary operations of the government. It was surely never intended that an executive functionary should nullify a law by neglecting or refusing to execute it.' The result of this conclusion is that the respondents are without right to urge the unconstitutionality of the concurrent resolution which is involved. . . . The judgment of the court below was in favor of relators, and it is affirmed.''

The case last mentioned seems to be the leading case in this country upon the question here presented, and reviews at great length the authorities on both sides thereof.

So in Thoreson v. State Bd. of Examiners, 19 Utah, 18, it is said: ''Where a statute requires an officer to perform a ministerial act, he will not be permitted, in a mandamus proceeding, to plead in justification of non-performance that the act would violate the Constitution. The decision [of the constitutional question] was the exercise of a judicial function. No such judicial power was conferred [upon the officer]. He had no greater personal interest in the matter than any other citizen of the State. To allow mere ministerial officers, who have no direct personal interest in the matter, to refuse to perform . . . their duty, on the ground that the performance of the act would

violate the Constitution, would be establishing a very dangerous precedent. . . . It would be deciding a constitutional question, affecting the rights of third persons, at the instance of officers whose duties' are merely ministerial, and who have no direct interest in the matter, and cannot in any event be made responsible.''

And the Supreme Court of Nebraska in State ex rel. v. Stevenson, 18 Neb. 421, said: ''It may well be doubted if the incumbent of a ministerial office, created by, and whose current duties rest solely upon, legislative authority, may invoke the provisions of the Constitution as a justification of his refusal to discharge a plain statutory duty. Under our present system, lawsuits may be prosecuted or defended only by a real party in interest. Such party alone has the right to make a record which will render the question litigated *res judicata*. The respondent can have no greater interest than that of any other citizen in the constitutional question which he invokes.''

The same question came before the Supreme Court of Florida, and in the case of Franklin County Commissioners v. State ex rel., 24 Fla. 55, the court said: ''The court will not listen to an objection made to the constitutionality of a statute by a party whose rights it does not affect, and who has, therefore, no interest in defeating it. A party who seeks to have a statute declared unconstitutional must not only show that he is or will be injured by it, but he must also show how. . . . The duty of the commissioners being merely to receive and keep in their official custody the returns, such duty involves no consideration by them of the legality of the election, . . . nor does it permit them to raise . . . the question of such legality as a reason for not performing their stated functions; nor does its performance decide or conclude anything as to the legality of the election, but merely preserves the evidence of the result. . . . As county commis-

sioners they are not charged with the duty of raising the question in behalf of those who may have personal interests which the enforcement of the Constitution may affect.''

In Maynard v. First Representative District of the Board of Canvassers, 84 Mich. 228, it is said: ''At the threshold of this controversy is an insurmountable objection to the position taken by the respondent, if it were insisted upon. The sole duty of the canvassers . . . is to examine the original statements, . . . and issue certificates. . . . It was never contemplated by the Legislature that they should possess any other power than to canvass the returns and to declare the result. . . . It is said that constitutional questions have often been raised and decided by this court in mandamus proceedings. This is true where personal and property rights are involved, and great inconvenience and damage would result if prompt action were not taken. In such case the public officers or body charged with the performance of duty may either decline to act, on the ground of the alleged unconstitutionality of the law, or he may proceed. . . . But this does not apply to cases where the duty of the officer is only clerical or ministerial, and the law provides an ample remedy afterward to test the validity of his action. . . . In such case, the officer must perform his duty, and leave the parties interested to contest the result in the proper forum and by the proper proceeding. He should not, in such case, be heard to plead the unconstitutionality of the law as an excuse for his refusal.''

And the Supreme Court of Maine, in Smyth v. Titcomb, 31 Me. 272, said: ''A ministerial officer intrusted with the collection and disbursement of revenue in any of the departments of the government, has no right to withhold a performance of his ministerial duties prescribed by law, merely because he apprehends that . . . the law may be unconstitutional. [Syllabus]. It

does not lie with the respondent, as a ministerial officer, to make [the objection that the law is unconstitutional]. He is not authorized or required to adjudicate the law.''

The quotations before made from the adjudications by courts from various States show the general tenor of the cases throughout this country; and, in brief, the consensus of opinion is, that the constitutionality of a statute imposing ministerial duties upon a ministerial officer cannot be raised by him in a mandamus proceeding instituted for the purpose of compelling him to perform those duties.

The reason assigned is, that since such an officer has no personal interest involved, to tolerate his objections to the validity of the law would lead to delays and endless confusion in the administration of the law. Such officers are not appointed or elected to pass upon constitutional questions; and, in most cases, it is common knowledge that such officers are not learned in the law, and, consequently, are not qualified to intelligently pass upon constitutional questions. Such questions challenge the ability, learning and judgment of our greatest lawyers and most eminent jurists.

While we have no hesitancy in holding that, ordinarily, in the first instance, ministerial officers cannot raise the constitutionality of a statute imposing ministerial duties upon them, however it does not follow therefrom that such officers may not do so upon the advice of the law officers of the State who have been elected for the purpose of advising such ministerial officers. In this State we have the Attorney-General and the prosecuting attorneys of the various counties, whose duty it is to give legal advice to other officers of the State and counties when called upon for advice regarding the administration of the affairs of their respective offices. [Secs. 4941, 4950 and 4951, R. S. 1899.] In the case at bar, it appears from the record that the Attorney-General of the State was called

upon and gave a written opinion to the county court of Nodaway county, which was the fiscal agent thereof, to the effect that the act in question was unconstitutional, null and void, and that said court informed relator of said opinion, and notified him not to pay the warrant mentioned in the pleadings; and that if he did so, he would be held liable upon his bond for the amount so paid thereon. In the light of those disclosures, the respondent not only had the legal right to raise the constitutionality of the act, but under those facts it became his legal duty to do so, otherwise he would have paid the warrant at his peril.

We therefore hold that in the case at bar the respondent had the right to raise the constitutionality of the Act of 1907.

II. This brings us to the consideration of the second proposition previously mentioned, namely, is the said Act of 1907 constitutional? If so, then the judgment of the circuit court should be reversed; if not, then it should be affirmed.

All enactments of the Legislature are presumed to be constitutional until the contrary is made clearly to appear. For this reason the burden rests upon the respondent to point out and make clear to this court that said act is violative of the Constitution.

Counsel for respondent challenge the constitutionality of the act for several reasons, and they will receive consideration in the order presented by counsel for respondent in their brief:

*First.* It is insisted that said act is violative of section 53 of article 4 of the Constitution of 1875 in this, that it is local and special and can never apply to any other counties, though they may subsequently attain a population of more than thirty-two thousand and less than fifty thousand, or may have had that population at the time when the law was passed. The act in question reads as follows:

"Section 3237a. That in all counties whose population, as ascertained by the United States census of 1900, is 32,000 inhabitants or over, and less than 50,-000 inhabitants, all prosecuting attorneys shall receive a salary of twenty-five hundred dollars per annum, and no other remuneration whatsoever, for services as prosecuting attorney: Provided, that in each of the counties affected by this act, the county court may, when, in its discretion, it is necessary to select an assistant prosecuting attorney, to receive such compensation as the county court may decide, in no case to exceed the sum of one thousand dollars in any one year, and who shall hold his office as such assistant prosecuting attorney during the will of the county court. The salary of the prosecuting attorney and the assistant prosecuting attorney shall be paid in monthly installments by warrants on the county treasurer drawn by the circuit clerk."

By a perusal of this act it will be seen that it applied only to those counties which had a population of thirty-two thousand or over and less than fifty thousand, as was shown by the United States census of 1900. It further appears therefrom that no provision was made for its application to counties which may have had the required population at the date of the passage of the act, or which might hereafter acquire such population.

This identical question came before this court in the case of State ex rel. v. Turner, 210 Mo. l. c. 83, where we were called upon to construe a similar act, enacted May 10, 1907. There we said:

"Relator insists that this act is violative of section 53 of article 4 of the Constitution of 1875, which prohibits the Legislature from enacting any statute which is special or local in its operation.

"The agreed statement of facts shows that the State University is located in Columbia, and that it was the only State educational institution which had en-

rolled fifteen hundred or more students at the time said act went into effect. According to this agreement the act could only apply to a section of country ten miles in diameter around the university, because there is no other State educational institution which had at the time fifteen hundred or more enrolled students; nor could the act ever apply in the future to other localities of the State, even though some one or more of the State educational institutions should have an enrollment of fifteen hundred students, for the reason that the act in express terms limits its operation to such localities as then had State institutions of learning, with an enrollment of fifteen hundred or more students. In other words, this act only applies to Columbia, and can never apply to other portions of the State although the same conditions may subsequently exist there. This being true, the act is clearly local and special in its operation; as much so as if it had named Columbia in express terms and then provided that no license should thereafter be granted to any person to keep a dramshop within five miles thereof.

"Similar statutes have many times been before this court for consideration, and we have uniformly held them to be unconstitutional and void, as will be seen by an examination of the following adjudications: State ex rel. v. Herrmann, 75 Mo. 1. c. 353; State ex rel. v. County Court, 89 Mo. 237; Murnane v. St. Louis, 123 Mo. 479; Henderson v. Koenig, 168 Mo. 1. c. 375; State ex rel. v. Messerly, 198 Mo. 351.''

Nothing remains to be said upon that subject, and we must, therefore, hold that said act is violative of said section 53 of the Constitution in the particulars stated.

*Second.* It is next contended that said act is also violative of said section 53 of the Constitution, in that it is local, for the reason that a general law could have been enacted instead thereof. Said section of the Constitution prohibits the passage of any local or special

law where a general law could have been enacted. This contention is also well grounded, for the reason that it can never apply to any county except those which had 32,000 inhabitants or over and less than 50,000, as shown by the census of the United States of 1900, and whereas a general law could have been enacted which would have applied to all counties which might at the date of the enactment or which might thereafter acquire the requisite number of inhabitants. [See case before cited; also the following: State v. Hill, 147 Mo 1. c. 67; State v. Granneman, 132 Mo. 326; State v. Anslinger, 171 Mo. 1. c. 611; State v. Thomas, 138 Mo. 95.]

*Third.* The third ground for assailing the validity of this act is, that it violates section 28 of article 4 of the Constitution. This section of the Constitution provides that "no bill . . . shall contain more than one subject, which shall be clearly expressed in its title."

The act in question not only amends a statute which prescribed what fees should be paid to the various prosecuting attorneys throughout the State, and fixes the fees of those in the counties to which the act applies, but also creates the office of assistant prosecuting attorney in those same counties, provides for the manner of their appointment and fixes the amount of their salaries.

While the question of creating an office and prescribing the manner of appointing the officer thereto is different from the question of prescribing the fees to be paid such officer; however, the one is germane to the other and so closely connected therewith that we are unable to say that they constitute two separate and distinct subjects within the meaning of said constitutional provision. [Ewing v. Hoblitzelle, 85 Mo. 64; State v. Miller, 45 Mo. 495; State ex rel. v. Miller, 100 Mo. 439; State ex rel. v. Heege, 135 Mo. 112; Elting

v. Hickman, 172 Mo. 237; State ex rel. v. Vandiver, 222 Mo. 206.]

In the last case it was held, that the thing prohibited by statute and the penalty imposed thereby for its violation were not such separate and independent matters as to constitute them two subjects within the meaning of said constitutional provision; but upon the contrary, that the penalty was germane to the thing prohibited by statute, and for that reason both might be properly included in the same bill, and do no violence to said constitutional provision. In the case at bar, while the salary of the prosecuting attorney may not be so much dreaded as the penalty before mentioned, nevertheless it is as closely connected with and as much germane to the office of the prosecution as said penalty was to the said crime. [See also State v. Coffee & Tea Co., 171 Mo. 634; State ex rel. v. County Court, 102 Mo. 531; State ex inf. v. Borden, 164 Mo. l. c. 236; Shively v. Lankford, 174 Mo. l. c. 544, 545; State v. Fulks, 207 Mo. 26.]

We are of the opinion that this contention of counsel for respondent is not well taken.

*Fourth.* The last insistence of counsel for respondent is, that said act of the Legislature is violative of section 12 of article 9 of the Constitution, in that its operation is not uniform; and cite in support thereof the following cases: State v. Hill, supra; Henderson v. Koenig, supra; State v. Granneman, supra.

Said section of the Constitution reads as follows: "The General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population."

In our opinion that insistence is untenable; and the authorities cited in support thereof are not in point. The act in question operates uniformly upon all salaries of all prosecuting attorneys who are embraced within its provisions. While the act is local and special

in its operation, yet, as before stated, its operation is uniform upon all matters and things embraced within its provisions.

Counsel for both relator and respondent have presented and discussed many propositions in their briefs, and have cited numerous authorities in support thereof; but, since entertaining the views of this case as heretofore expressed, their consideration becomes unnecessary.

For the reasons before stated, the judgment of the circuit court denying the peremptory 'writ of mandamus is affirmed. All concur.