[No. 3319. Feb. 4, 1929.]

STATE v. CULDICE.

[275 Pac. 371.]

R. C. Dow, Atty. Gen., and Renehan & Gilbert, of Santa Fe, for the State.

Reese & Reese and O. O. Askren, all of Roswell, for appellee.

## OPINION OF THE COURT

BICKLEY, C. J. By chapter 35, Laws 1919, as amended by chapter 92, Laws 1927, the Legislature provided that only licensed persons should practice dentistry. It vested the authority to license in a board of examiners consisting of five practicing dentists, and it required that persons desiring to practice should apply to that board and undergo examination before it. Every person of good moral character, of 21 years of age, with a diploma from a reputable dental college, was declared eligible, and it was also provided that the board may, in its discretion, refuse to grant a license to any person they find not qualified, or guilty of cheating, deception, or fraud during the examination, or for public health reasons.

An information was filed against appellee, in the district court for Chaves county, charging him with having practiced dentistry without a license upon the 30th day of June, 1927, "by then and there supplying one J. H. Long artificial teeth as substitutes for the natural teeth of the said J. H. Long." A motion to quash the information was filed by defendant.

The following contentions were presented to the trial court by said motion:

(1) The information fails to charge a public offense.

(2) The Dental Act, under which the information was drafted, is unconstitutional for each of the following reasons: (a) That it vests arbitrary powers in the state board of dental examiners; (b) that it fails to specify with certainty the subjects upon which an applicant for license shall be examined; (c) that it is in excess of the police powers of the state, in that it seeks to regulate the

doing of acts innocent in themselves; (d) that it tries to create a monopoly.

The trial court sustained the motion of defendant and quashed the information. The order does not specify which of the grounds of the motion to quash the court sustained, so we must assume that the trial court considered all the grounds presented in said motion as being well taken.

No contention is made that the defendant suffered from arbitrary treatment at the hands of the dental board. No attack is made upon any action which the board is claimed to have taken, and there is no showing that defendant ever applied to the board for a license, and the attack is solely upon the act itself, based upon the assumption that under it the board might act arbitrarily, and otherwise complaining that alleged defects in the act render it unconstitutional.

In State v. City of Albuquerque, 31 N. M. 576, 249 P. 242, we decided: "Only persons claiming to be adversely affected are authorized to question the constitutionality of an act," citing Asplund v. Alarid, etc., 29 N. M. 129, 219 P. 786, where we said:

"It is not the duty of this or any other court to sit in judgment upon the action of the legislative branch of the government, except when the question is presented by a litigant claiming to be adversely affected by the legislative act on the particular ground complained of."

This language of former Justice Botts, the writer of the opinion in that case, we quoted with approval in Asplund v. Hannett, 31 N. M. 641, 249 P. 1074. See, also, Board of Trade of City of Chicago v. Olsen, 262 U. S. 1, 43 S. Ct. 470, 67 L. Ed. 839, and Massachusetts v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078. We therefore decline to discuss the constitutionality of the act based upon alleged defects (a) and (b), because it is not apparent that the defendant (appellee) is adversely affected by the provisions of the act.

It is conceded that the state, in the exercise of its police power, has the right to enact reasonable regulations of general operation governing the right of its citizens to

practice dentistry. That such regulations do not contravene constitutional or statutory inhibitions against the creation of monopolies has been frequently decided. See 19 R. C. L. "Monopolies and Combinations," § 11, p. 19, and 41 C. J. "Monopolies," p. 91, § 25. We find nothing unreasonable in the act in question, which would take it out of the rule.

In order to properly consider whether the information is sufficient to charge a public offense, it will be necessary to consider whether the statute is in excess of the police power of the state, in that it seeks to regulate the doing of acts innocent in themselves, as contended by appellee. To ascertain what is forbidden—what constitutes the crime created by the Legislature, and charged in the information —consideration must be given to the entire enactment.

The title of the act is :

"An act creating a board of dental examiners and regulating the practice of dentistry in the state of New Mexico."

Section 9 provides :

"Any person shall be regarded as practicing dentistry within the meaning of this act, who shall treat any of the diseases of the oral cavity, teeth, gums, maxillary bones, or extract teeth, or shall prepare or fill cavities in human teeth, correct malposition of teeth or jaws, or supply artificial teeth as substitutes for natural teeth, or any other practice included in the curricula of recognized dental colleges: Provided, that nothing in this Act shall be so construed as to prevent regularly licensed physicians and surgeons from extracting teeth or treating any disease coming within the province of the practice of medicine: Provided, that the exception in this section shall not apply to itinerant licensed physicians and surgeons who have abandoned their practice as physicians and surgeons, and are in fact and effect practicing dentistry."

It is claimed by appellee that this section is in excess of the police power of the state, because: (a) The definition "supply artificial teeth as substitutes for natural teeth" is too vague, indefinite and uncertain upon which to base a criminal information and undertakes to prohibit acts which are innocent in themselves and are not within the police power of the state to prohibit. (b) Section 9 of said chapter 35, Laws 1919, is not within the police power, as the definition of practicing dentistry therein enacted is so

broad as to include within its terms all gratuitous acts of relief and acts rendered in cases of emergency.

Appellee expresses the belief that our Dental Act is unique, in that it is the only one he has found which undertakes to make it an offense to "supply artificial teeth as substitutes for natural teeth," without a license. A cursory research discloses that the Dental Act of Illinois of 1905 (Laws 1905, p. 319), in section 5 thereof, defines the practice of dentistry as follows:

"Any person shall be regarded as practicing dentistry or dental surgery within the meaning of this act, who shall treat, or profess to treat any of the diseases or lesions of human teeth or jaws or extract teeth or shall prepare and fill cavities in human teeth or correct the malposition of teeth or supply artificial teeth as substitutes for natural teeth: Provided, that nothing in this act shall be so construed as to prevent regularly licensed physicians or surgeons from extracting teeth. Further, this act shall not prevent students from performing dental operations under the supervision of competent instructors within a dental school, college or dental department of a university recognized as reputable by the Illinois state board of dental examiners."

No substantial changes have been made in it, and it has withstood a number of attacks upon it, although the precise one made by appellee has not been made, as far as we can find. We are impelled to the belief that, if its meanings were not generally understood, and if the liberties of the people are in jeopardy from the language which appellee deems vague, indefinite, and uncertain, such attack would have been made during a period of nearly a quarter of a century.

Appellee argues that the word "supply," as used in the act, is so broad that it covers numerous acts that the Legislature has not power to prohibit, even in the exercise of its police power. One of the definitions of the word "supply," as a verb, is "to make provision for; to provide; to serve instead of; to take the place of." 37 Cyc. 607. In the "Thesaurus of English Words and Phrases" of Roget, the words which are grouped as expressing the idea of *change of one thing for another,* at paragraph 147, are the following:

"Substitute; put in the place of; change for; make way for; give place to; supply; take the place of; supplant; supersede; replace."

It is the duty of the court to sustain a statute, if by reasonable and proper construction it can be done. Rapp v. Venable, 15 N. M. 509, 110 P. 834. The legislative department being a co-ordinate branch of the government, it is the duty of the court to resolve any doubt in favor of the validity of a legislative enactment. State v. Marron, 17 N. M. 304, 128 P. 485.

When a statute is susceptible of two constructions, one of which supports the act and gives it effect, and the other renders it unconstitutional and void, the former will be adopted. Abeytia v. Gibbons Garage of Magdalena, 26 N. M. 622, 195 P. 515. It being manifestly the purpose of the act to prevent the doing of those things about or upon the human teeth, or jaws, which require skill, adequate training, and understanding in their performance, and with the foregoing rules in mind, and following the rule of construction that the words of a statute are to be construed in reference to its subject-matter, and, if they are susceptible of several meanings, that one is to be adopted which best accords with the subject to which the statute relates, we hold that to "supply artificial teeth as substitutes for natural teeth" means the operation of replacing the natural teeth of a person with artificial teeth.

In People v. Carr, 276 Ill. 329, 114 N. E. 494, construing the Illinois statute, and holding certain acts complained of not to be in violation thereof, the Supreme Court of that state suggested:

"One test would be whether the persons treated could be considered as patients of plaintiff in error. He would not be practicing dentistry, unless the relation of practitioner or doctor and patient existed between him and those for whom he did work."

We imagine that artificial teeth are made for the usual purpose of being furnished to be used ultimately as substitutes for natural teeth; but we apprehend little vexation from criminal prosecutions under the Dental Act of persons who furnish artificial teeth to dentists or others as a commercial transaction, if such acts are unaccompanied by the usual operation incident to replacement of the natural teeth by such artificial teeth.

In view of our construction of the act, we have examined the information in the light of the attack made upon it, and find it sufficient. For the reasons stated, the judgment of the district court is reversed, and the cause remanded; and it is so ordered.

WATSON and PARKER, JJ., concur.