[No. 3399.   Feb. 18, 1929.]

STATE ex rel. DAVIDSON, State Highway Engineer, et al. v. SEDILLO, County Treasurer.

[275 Pac. 765.]

Fred Nicholas, Dist. Atty., of Los Lunas, for appellant.

Carl H. Gilbert, of Santa Fe, for appellees.

## OPINION OF THE COURT

BICKLEY, C. J.   Relators petitioned for a writ of mandamus directed to the respondent in his official capacity, requiring him to remit certain moneys in his hands, being the proceeds of tax levies made pursuant to chapter 37, Laws 1925, to the state treasurer of the state of New Mexico, as directed by said statute.

An alternative writ of mandamus was issued, and respondent demurred thereto, upon the grounds that the writ and the petition upon which it is based do not state facts sufficient to constitute a cause of action or to sustain the writ in this, to wit:

"The authority for the Treasurer to remit the proceeds of certain levies required of him to be remitted in the Alternative Writ of Mandamus in this case is based on chapter 37 of the Laws of 1925 of the State of New Mexico, and that said Legislative Act is unconstitutional for the following reasons."

The demurrer then proceeds to point out alleged defects in the statute said to render it unconstitutional.   The return of the respondent by way of demurrer and legal exception to the alternative writ was by the district court overruled.   The respondent having announced in open court that he would not further plead but would stand on his demurrer, the court ordered that a peremptory writ of mandamus issue, directed to the respondent as county treasurer of Valencia county, N. M., commanding him to transmit to the state treasurer, to the credit of the Isleta-Belen road fund, all moneys in his hands by way of proceeds of the special tax levies theretofore made in said county of Valencia for the purpose of securing funds for the construction and improvement of the Isleta-Belen highway.   Respondent appeals.  ·

The situation raises at the outset the question: Has a ministerial officer the right or power to declare an act unconstitutional or to raise the question of its unconstitutionality without showing that he will be injured in person, property, or rights by its enforcement?

We have heretofore decided that we are to be guided by the rule that the presumption is that the Legislature has performed its duty and kept within the bounds fixed

by the Constitution. See Asplund v. Alarid, 29 N. M. 129, 219 P. 786. This being so, the allegation in the return that the act in question is unconstitutional means that it has been so declared by a court of competent jurisdiction.

This court, therefore, is confronted at once with the question, "Is that allegation true?" Finding that it is not —the power to declare an act unconstitutional being lodged nowhere but in the courts—such an allegation in the return is no defense. We are therefore not called upon to pass upon the constitutionality of the act, because, it not having been declared unconstitutional by the courts, ministerial officers must obey it until in a proper proceeding its constitutionality is judicially passed upon.

It is not claimed in the case at bar that an official compliance with the mandate of the statute will in any manner affect adversely the private interests of the respondent.

In 12 C. J. "Constitutional Law," § 183, after stating that there is a conflict of authorities on the question, it is said:

"The better doctrine, supported by an increasing weight of authority, is that a mere subordinate ministerial officer, to whom no injury can result and to whom no violation of duty can be imputed by reason of his complying with a statute, will not be allowed to question its constitutionality."

State v. McFarlan, 78 Mont. 156, 252 P. 805, a late Montana case (1927), affords an apt illustration. In that case, the city of Wolf Point sought a writ of mandate to compel the defendant, as treasurer of Roosevelt county, to pay to the city certain sums of money collected by him as interest and penalties on delinquent taxes. The defendant admitted that, in his capacity as county treasurer, he collected money from the taxpayers as aforesaid, but defended against the proceeding upon the 'ground that the statute authorizing such collection was unconstitutional. The court said:

"The defendant is not in a position to assert that the foregoing statutes are, or that any one of them is, unconstitutional. Admittedly, he collected the taxes and, having done so, it was his duty to pay them to the city treasurer. Town of White Sulphur Springs

v. Pierce, 21 Mont. 130, 53 P. 103. The taxpayer who paid the taxes, voluntarily it must be assumed, is not complaining. The taxes were paid for the benefit of the city, not for the county or the defendant treasurer. So upon this attempted defense the treasurer will not be heard. Board of Commissioners of Meagher County v. Gardner, 18 Mont. 110, 44 P. 407; Adams v. Saunders, 89 Miss. 784, 42 So. 602, 119 Am. St. Rep. 720, 11 Ann. Cas. 327, and exhaustive note. Moreover, one who is neither injured nor jeopardized by the operation of a statute cannot challenge its constitutionality. State v. Vettere, 77 Mont. 66, 249 P. 666."

In the Ann. Cas. note referred to in the last preceding quotation, appears the following statement of the rule, supported by a large number of cases:

"A tax collector is bound to account for all moneys paid to him on account of taxes, and it is no defense to an action brought against him to recover the same that such taxes were not legally levied. A collector can avail himself of such defects only as have prevented the performance of his duty. To permit a collecting officer to sit in judgment upon the legality of the tax collected by him would result in intolerable evil. As a ministerial officer, it is his duty to yield absolute submission to the mandate of his warrant, and allow the tribunals appointed by law to decide as to the validity of the tax which he is called upon to collect."

In the annotation to State ex rel. Atlantic C. L. R. Co. v. State Board of Equalizers (Fla.) 30 A. L. R. 362, the cases are collected, and the note-writer comments as follows:

"Despite, however, the conflicting points of view which have been taken, which have resulted in apparently conflicting decisions on the question under annotation, the courts seem in general to have followed a line of thought which, though not expressly or definitely brought out, or always adhered to, furnishes a general rule commonly applied; and that is that a merely ministerial officer, whose duties are of a subordinate character, imposing on him no personal obligation or liability, is not allowed to question the validity of a statute in a mandamus proceeding to compel his obedience thereto."

And again:

"The weight of authority is in accord with the decision in the reported case * * * in holding that a public officer whose duties are of a ministerial character cannot question the constitutionality of a statute as a defense to a mandamus proceeding to compel him to perform some official duty, where in the performance of such duty his personal interests or rights will not be affected, and he will not incur any personal liability, or violate his oath of office."

In the reported case, cited supra, the Florida court said:

"The contention that the oath of a public official requiring him to obey the Constitution places upon him the duty or obligation

to determine whether an act is constitutional before he will obey it is, I think, without merit. The fallacy in it is that every act of the Legislature is presumably constitutional until judicially declared otherwise, and the oath of office 'to obey the Constitution' means to obey the Constitution, not as the officer decides, but as judicially determined. The doctrine that the oath of office of a public official requires him to decide for himself whether or not an act is constitutional before obeying it will lead to strange results, and set at naught other binding provisions of the Constitution."

Corpus Juris, cited supra, quotes as the reason for the majority rule the following from Wiles v. Williams, 232 Mo. 56, 71, 133 S. W. 1, 6 (34 L. R. A. (N. S.) 1060):

"The reason assigned is, that since such an officer has no personal interest involved, to tolerate his objections to the validity of the law would lead to delays and endless confusion in the administration of the law."

In State v. Leech, 33 N. D. 513, 522, 157 N. W. 492, 493, the court discussed the conflict of decisions and concluded:

"The other rule, supported by the greater weight of authority, is based largely upon governmental policy, and virtually prohibits a ministerial officer from challenging the constitutionality of a legislative act, except where he is personally interested, as, by reason of a disbursement to be made thereunder for which he is financially responsible. This upon the theory in the main that courts should accept as final the acts of the Legislature and discourage attacks upon them, except where necessary to protect the private interests of the individual asserting invalidity and peculiarly and particularly affected thereby."

Such theory we have promulgated and adhered to. See Asplund v. Alarid, supra; State v. City of Albuquerque, 31 N. M. 576, 249 P. 242; Asplund v. Hannet, 31 N. M. 641, 249 P. 1074, and State v. Culdice, 33 N. M. 641, 275 P. 371.

That the county treasurer is called upon by the statute to perform an act ministerial merely in character we do not doubt, and we prefer to follow the authorities (supported in principle by our own decisions) which hold that the constitutional question may not be raised by such an officer as a defense in mandamus proceedings to compel him to obey the statute.

The judgment of the district court is therefore affirmed, and it is so ordered.

WATSON and PARKER, JJ., concur.