THE STATE ex rel. MISSOURI & NORTH ARKAN-SAS RAILROAD COMPANY v. JOHNSTON, Judge, and ROACH, Secretary of State, et al.

**In Banc, April 25, 1911.**

1. **REMOVAL OF CAUSES TO FEDERAL COURT: Unconstitutional Act.** The Supreme Court concurs with the decision of the Supreme Court of the United States in Herndon v. Railroad, 218 U. S. 135, holding unconstitutional the Act of March 13, 1907, declaring that, if a railroad company, chartered under the laws of another State and admitted to do business in this State, should, without the consent in writing of the other party to any suit or proceeding brought by or against it in any court of this State, remove the same to a Federal court, or should institute a suit or proceeding against a citizen of this State in a Federal court, the license or certificate of authority of the railroad company to carry freight or passengers from one point in this State to another point in this State should forthwith be revoked by the Secretary of State, etc.

2. **————: Prohibition Against Judge.** A railroad company cannot file a petition in the circuit court for a removal of a suit, in which it is defendant, to the Federal court, and then, on the ground that the statute which declares that any railroad company which removes a cause to a Federal court shall forfeit its license to do business in this State is unconstitutional, obtain a writ from the Supreme Court prohibiting the circuit judge from granting its petition to remove. Whether or not that statute is unconstitutional has nothing to do with the judge's jurisdiction. Even if it were valid, the license cannot be revoked until the case is actually removed. But aside from that, if the petition and bond for removal are sufficient, the mere presentation of them removes the cause; and the circuit court has judisdiction to pass judgment on their suf-

ficiency, and if its decision is right no complaint can be made, and if wrong it is mere error, and in either case the judge would not be amenable to the writ of prohibition.

3. ————: **Prohibition Against Litigant.** A party who has brought a suit, against a foreign railroad company licensed to do business in this State, in the proper circuit court, cannot be prohibited from removing it to the Federal court by writ of prohibition after the company has filed its sufficient petition and bond for removal.

4. ————: **Prohibition Against Secretary of State: Judicial Function: Remedy.** The Secretary of State is an executive officer, and if he were to refuse to do what the statute requires him to do, a mandamus may reach him; or if he should attempt to do what he ought not to do, he may be restrained by injunction. But he is amenable to a writ of prohibition only, if at all, when he assumes to exercise a judicial function; but he cannot be said to assume a judicial function so long as he obeys a statute.

5. ————: ————: ————: **Passing on Constitutionality of a Statute.** The power to declare a statute unconstitutional belongs only to the judicial department of the State government. Neither the Secretary of State, nor any other mere ministerial officer, is vested with such power. When an act has been enacted by the Legislature under all the forms of the Constitution, it is the duty of the ministerial officer to obey it, whatever views he may entertain of its constitutionality; but he will not be considered as assuming a judicial function, and as having determined it to be constitutional, so long as he obeys it.

6. ————: ————: **To Restrain Obeyance of Statute.** A writ of prohibition will not lie to prohibit the Secretary of State from obeying a statute, whether or not it be constitutional.

7. ————: ————: **Misjoinder of Parties.** There is no connection between the action the circuit court may take in the matter of the petition by a defendant foreign railroad company for removal of the cause to a Federal court, and the action that the Secretary of State might take, after such order is made, towards revoking the license of such company to do business in this State—the statute requiring him to revoke its license when it removes a cause to the Federal court. The court could not make an order directing him to revoke defendant's license and if he revoked its license it would not be in obedience to an order of court. It was, therefore, a misjoinder of parties to unite the supposed cause of action against the judge with that against the Secretary of State in the same petition for a writ of prohibition.

Prohibition.

WRIT DENIED.

*O. L. Cravens* for relator.

(1) The objection that the Wilson case did not land in the Federal court by filing the removal papers is not well taken. The filing of removal papers of itself accomplished the removal of the case to the Federal court for the present purposes. Black's Dillon on Removal, sec. 198; Company v. Company, 3 S. D. 590; Wills v. Railroad, 65 Fed. 532; Brown v. Murray, 43 Fed. 614; Miller v. Tobin, 18 Fed. 609; Osgood v. Railroad, 18 Fed. Cas. No. 10, 604; Noble v. Assn., 48 Fed. 337; Black's Dillon on Removal, secs. 192, 195; Herryford v. Company, 42 Mo. 148; Stanley v. Railroad, 62 Mo. 508; Berry v. Railroad, 64 Mo. 533; Steamship Company v. Tugman, 106 U. S. 118. (2) The objection of multifariousness is not well taken. This objection is one that addresses itself to the discretion of the court. The objection is not looked on with favor by courts, and the suit will not be thrown out of court for this fault except in a clear case. Bracken v. Rosenthal, 151 Fed. 136. In no case could a bill in equity, wherein this objection most usually arises, be found multifarious where one general right on the part of the plaintiff is claimed, although the several defendants may have or claim distinct interests, where the common point of litigation is the same, and where the petition affects the entire subject-matter, as here, and the judgment settles the rights of all the parties to the suit in the point in litigation. Horner v. Miller, 147 Fed. 295; Rogers v. Mining Co., 154 Fed. 606; Field v. Insurance Co., 166 Fed. 607; Fowler v. Palmer, 160 Fed. 16; Bob v. Bob, 76 Mo. 419; Hanson v. Neal, 215 Mo. 217; Reinhart v. Long, 95 Mo. 396; Waddell v. Waddell, 99 Mo. 338; Boggess v. Boggess, 127 Mo. 305. (3)

Prohibition is available in this case, and the Act of 1907 creates judicial or quasi-judicial power in the Secretary of State, (a) because public franchises can be divested only by *quo warranto;* (b) no power of official action can be founded on an unconstitutional law; (c) the Missouri courts will prohibit the usurpation of judicial power by a ministerial officer; (d) the act of revocation of the certificate of authority of plaintiff is of a judicial nature, as shown by many cases. Public franchises can be divested only by *quo warranto.* Railroad v. Greene, 30 Sup. Court Rep. (U. S.) 287; Ludwig v. Telegraph Co., 30 Sup. Court Rep. (U. S.) 280; Telegraph Co. v. Kansas, 30 Sup. Court Rep. (U. S.) 190; Kavanaugh v. St. Louis, 220 Mo. 496; State ex rel. v. Railroad, 140 Mo. 539; Monongahela N. Co. v. United States, 148 U. S. 312. The acts provided to be performed by the Secretary of State are judicial in their nature, and this is all that is required to render prohibition available as a remedy, and affect the rights of property of the corporation in a manner analogous to that in a *quo warranto* proceeding of a court acting judicially. 23 Cyc. 1614, 1620; 17 Am. and Eng. Ency. Law (2 Ed.), 886; 8 Cyc. 809; Railroad v. Baxter, 212 Ill. 638; People v. Mallory, 195 Ill. 582; In re Dumford, 7 Kas. App. 89; People v. Chase, 165 Ill. 527; State v. Gilbert, 47 N. E. (Ohio) 559. The power to inflict penalties is judicial. School Board v. King, 107 S. W. (Ky.) 247. No power of official action can be founded on an unconstitutional law. The Act of 1907 is void because it confers judicial power on an executive officer, and also violates numerous other provisions of the State and Federal Constitution hereinafter indicated, and this warrants prohibition. State ex rel. v. Nortoni, 201 Mo. 1; State ex rel. v. Eby, 170 Mo. 497; Bell v. District Court, 28 Nev. 280; Levy v. Superior Court, 105 Cal. 600; Railroad v. Co. Com., 127 Mass. 50; Sweet v. Hulbert, 51 Barb. (N. Y.) 312; State ex rel. v. Simons, 32 Minn. 540; State ex rel. v.

Simons, 2 Spears L. (S. C.) 762; McDonald v. Guthrie, 43 W. Va. 595; 22 Am. and Eng. Ency. Law (2 Ed.), 230; State ex rel. v. Young, 29 Minn. 523; 6 Cyc. 606. The Missouri courts will prohibit usurpation of judicial power by a ministerial officer. State ex rel. v. Elkins, 130 Mo. 90; School Dist. v. Burris, 84 Mo. App. 654. The act of revocation of the certificate of authority of plaintiff is of judicial nature. High's Ex. Legal Rem. (3 Ed.) secs. 764a, 778a; State v. Stockhouse, 14 S. C. 417; Railroad v. Commissioners, 127 Mass. 50; Sweet v. Hulbert, 51 Barb. 312; Ex parte Roundtree, 51 Ala. 42; Chandler v. Railroad Courts, 141 Mass. 208; People ex rel. v. Supervisors, 121 N. Y. 345; Brazie v. County Court, 25 W. Va. 213; Railroad v. Commissioners, 127 Mass. 50; State ex rel. v. Eby, 170 Mo. 497; State ex rel. v. Fort, 178 Mo. 518; State ex rel. v Ryan, 180 Mo. 52.

*Elliott W. Major,* Attorney-General, *James T. Blair,* Assistant Attorney-General, and *Charles G. Revelle,* Assistant Attorney-General, for the State.

(1) The judge is prohibited, on the prayer of relator, by the writ issued, from doing the only thing he can do in the case—ordering the cause removed to the Federal court. By the Act of March 13, 1907, it is only when relator actually removes this suit that the Secretary of State would be warranted in revoking relator's license under the act. Laws 1907, pp. 174, 175. The writ, on relator's specific prayer, absolutely prohibits the removal of the suit against relator, and therefore renders impossible the only condition, on the facts alleged, which could warrant Roach in acting in the premises. There is no allegation that the Secretary of State intends revoking relator's license until the suit in Newton county is removed, and the suit cannot be removed by reason of the writ in this case. There is no presumption that the Secretary will act

improperly and without reason and in advance of an actual removal. Pacific Express Co. v. Seibert, 44 Fed. 315, affirmed in 142 U. S. 339. The fact that the petition misstates the legal effect of the statute in incorporating, by inference, the words "attempt to remove" therein, does not affect the case, since the demurrer does not admit such misstatement. Pennie v. Reis, 132 U. S. 470; Finney v. Guy, 189 U. S. 343. (2) Since the petition alleges no removal of the cause and the writ prohibits such removal, and since the Secretary cannot act until the case actually lands in the Federal court, the petition states only a moot case. Even if the Secretary attempted to misconstrue the law as including an "attempt to remove," the case would not be one which could be entertained. Arbuckle v. Blackburn, 191 U. S. 413. (3) The petition is multifarious. The bill, if it states anything, states two independent causes of action, without connection or common origin and against separate defendants; the evidence pertinent to one cause would not be pertinent to the other; each can be fully determined without reference to the other; the decree as to each defendant would be exclusively applicable to him; the relief against each defendant is distinct as against the other; neither defendant's obedience to the decree would affect that of the other; the misjoinder is manifest. Street's Fed. Eq. Prac., sec. 440; Gaines v. Chew, 2 How. 642; Brown v. Trust Co., 128 U. S. 412. And the objection of multifariousness, where manifest, as here, can be made by general as well as by special demurrer. Emmons v. Nat. Mut. B. & L. Ass'n, 68 C. C. A. 330; Hefner v. Northwestern Ins. Co, 123 U S. 751. (4) The fundamental objection to this proceeding, as against the Secretary of State, is that it is an attempt to invoke the writ of prohibition against a ministerial officer. "The proceedings to be prohibited must be of a judicial character. A prohibition would not be granted in respect of any proceeding belonging

to the executive government of the country." Short on Mandamus and Prohibition, 452 (439); 3 Blackstone's Com. 112; 2 Spelling on Inj. and Extr. Rem. 1477, 1478. "And to warrant granting the writ to any organized body other than a court, it is necessary that the acts sought to have prohibited are purely judicial and not executive, administrative or legislative." 2 Spelling on Inj. and Extr. Rem. 1500 (sec. 1744); State ex rel. v. Goodier, 195 Mo. 559; Kalbfell v. Woods, 193 Mo. 687; Mayor v. Minor, 70 Ga. 191; Town of Davis v. Davis, 40 W. Va. 470; Board v. Spitler, 13 Ind. 239; Camron v. Kenfield, 57 Cal. 553; Spring Valley Water Works v. Bartlett, 63 Cal. 245; Smith v. Whitney, 116 U. S. 176; Buck v. Hardwicke, 23 Gratt. 51; Atkins v. Siddons, 66 Ala. 453. (5) "The object of the writ of prohibition is to prevent a court of peculiar, limited or inferior jurisdiction from assuming jurisdition of a matter beyond its legal cognizance. It can only be issued to restrain the exercise of judicial functions. Smith v. Whitney, 116 U. S. 176; High's Extr. Leg. Rem., sec. 765. (6) The better doctrine is that prohibition will not lie to prevent a State court from proceeding in a cause after petition and bond for removal thereof have been filed. High's Extr. Leg. Rem., sec. 787a; 2 Spelling on Inj. and Extr. Rem., 1495 (sec. 1736); Railroad v. Superior St., 63 Cal. 608. (7) The statute assailed we think constitutional, under the allegations of the petition in this case. Doyle v. Continental Ins. Co., 94 U. S. 540; Security Mut. Ins. Co. v. Prewitt, 202 U. S. 246.

VALLIANT, C. J.—Relator prays a writ of prohibition to go against the judge of the circuit court of Newton county, the Secretary of State, and Scott Wilson.

The case stated in the petition is substantially as follows:

Relator is an Arkansas corporation owning and operating a railroad in this State in connection with its

railroad in Arkansas, and is engaged in both inter-
state and intrastate railroad traffic; it had, prior to
March 13, 1907, complied with the laws of this State
prescribing the terms and conditions on which a for-
eign railroad corporation could be admitted to do a
railroad business in this State; and had received from
the Secretary of State a certificate of authority to so
transact its business, and had been so engaged for sev-
eral years prior to the date mentioned above, and was
so engaged when the matters complained of occurred.
The General Assembly by an act approved March 13,
1907 (Laws 1907, pp. 174-175), declared that if a rail-
road company chartered under the laws of another
State and admitted to do business in this State should,
without the consent of the other party in writing to any
suit or proceeding brought by or against it in any court
of this State, remove the suit or proceeding to a Fed-
eral court, or should institute a suit or proceeding
against a citizen of this State in a Federal court, the
license or certificate of authority of the railroad com-
pany to carry freight or passengers from one point in
this State to another point in this State should forth-
with be revoked by the Secretary of State, and that
such right should cease and the Secretary of State
should publish such revocation in a newspaper of large
and general circulation, and the corporation should
not be authorized or permitted to do such business,
that is *intra state* business, for a period of five years.
In November, 1908, Scott Wilson, one of the respond-
ents herein, a citizen of Missouri, brought suit against
the railroad company in the circuit court of Newton
county to recover the sum of $3071. The railroad com-
pany in due time and due form filed its petition and
bond for the removal of that suit to the Federal court
for that district, on the ground that it was a citizen of
Arkansas and the plaintiff therein was a citizen of
Missouri, and that he had refused to give his consent
in writing to such removal. That it is the intention

of the Secretary of State as soon as the order of removal is made in the circuit court of Newton county to proceed to revoke relator's license and make publication of the revocation as the Act of March 13, 1907, requires him to do; and that the judge of the Newton Circuit Court and the plaintiff therein, Wilson, threaten and are about to take steps in that suit to prosecute and determine the same. The petition avers that that act is unconstitutional, being in violation of certain provisions of the Federal Constitution and also of the State Constitution, specified in the petition.

The prayer of the petition is that the Secretary of State be prohibited from revoking relator's license or certificate of authority above mentioned and from attempting to enforce the Act of March 13, 1907, and that the judge of the circuit court of Newton county and Wilson, the plaintiff in the suit mentioned, be prohibited from taking any steps in that suit "except to keep the same pending therein in its present status."

The judge for answer to the petition, or return to the rule to show cause, says that he has taken no action in the suit mentioned and will not do so until the further order of this court, nor suffer Wilson to do so. The Secretary of State files a demurrer to the petition, the main points of which are that there is an improper joinder of complaints or causes of action, that the matter complained of against him has nothing to do with that complained of against the judge and Wilson; and that the writ of prohibition does not lie against a ministerial officer to prohibit his performing a purely ministerial act. He also files a motion to quash the order or rule to show cause, on the grounds stated in his demurrer, and on the additional ground that the act of the Legislature complained of does not purport to authorize him to revoke relator's license until the circuit court makes some order which in effect removes the suit in question to the Federal court, whereas the judge of the court is prohibited making any such order

and is required to hold the cause in its present status until the further order of this court. Scott Wilson files a demurrer and also a motion to quash, in which he says in substance that there is no cause of action stated either against the judge or himself, that the relator's petition for removal and bond are sufficient to authorize a removal of the suit to the Federal court and it ought to be allowed to go there and be determined, and not held up in the circuit court of Newton county under the order of this court to take no action at all in regard to it.

I. Since this proceeding has been pending in this court the main question in the case has been decided by the Supreme Court of the United States. In the case of Herndon v. Chicago, R. I. & P. R. R. Co., 218 U. S. 135, it was decided that the act of the General Assembly approved March 13, 1907, above mentioned, was in conflict with the Constitution of the United States, was void and of no effect. In that decision we entirely concur. The danger therefore which relator apprehended when it filed its petition in this proceeding no longer threatens. The act having been declared unconstitutional it remains now for this court to decide whether at the time of filing the petition herein the relator under the showing made in its petition, was entitled to a writ of prohibition. Unquestionably if the relator's rights were threatened under the pretext of an unconstitutional act it was entitled to judicial protection in some form, but the question is, was it entitled to a writ of prohibition?

II. What had the judge of the Newton Circuit Court done or threatened to do that rendered him amenable to a writ of prohibition? When the petition for the removal of the cause was filed in his court there was but one of two acts the judge could do, namely, he could grant the petition and order the cause to be removed, or he could refuse to grant it and hold the

cause for trial in his court. If he should grant the petition and order the removal, or express a purpose to do so, could the petitioner be heard to complain and ask that the judge be prohibited from doing the very thing that the petition asked him to do? On the other hand if he refused the petition and decided to retain the cause for trial in his own court, then. if his action was of any legal effect, the cause was not removed and the penalty imposed by the unconstitutional Act of March 13, 1907, had no application. It was only in case the cause was removed that that act, according to its purport, was to apply.

In passing on the question of the sufficiency of the petition and bond for removal the judge had nothing to do with the Act of March 13, 1907. Whether it was constitutional or not was not a matter for his consideration, he was simply to decide whether under the act of Congress a sufficient showing was made for the removal of the cause to the Federal court. He had jurisdiction to pass on that question, and even if he should decide it erroneously there would be no case for a writ of prohibition.

In point of law, so far as the question of removal is concerned, it is immaterial what order the judge might make, or that he make any order; if the petition and bond are sufficient under the act of Congress the mere presenting them to the court removes the cause, and if they are not sufficient an order of the court directing the removal would not remove it. That subject has been so recently discussed in an opinion by this court that we deem it unnecessary to do more than refer to the case. [State ex rel. v. Mosman, 231 Mo. 474.] But whilst the act of Congress does not require any order of the State court on the question, yet, for the purpose of keeping its own record clear, it is proper that the court should make an order to be entered of record showing whether the petition for removal was granted or refused. Such is the general

practice and it is approved. In this case if the circuit judge should decide that the petition and bond for removal are sufficient he has a right to have an order to that effect entered of record and he cannot be prohibited from doing so.

The relator first filed its petition and bond for removal in the circuit court and then, without waiting for that court to make any order, either granting or refusing the petition, came to this court and filed its petition praying that that court be prohibited from taking any steps in said cause "except to keep the same pending therein in its present status," and it was so ordered. So the judge is prohibited from either granting or refusing to grant the relator's own petition, and the cause is held in suspense in that court. The relator's idea seemed to be that if the circuit court should grant the petition for removal a case would be made for the Secretary of State to take action under the Act of March 13, 1907; therefore the relator took the rather anomalous course of asking this court to prohibit the circuit court from doing the very thing that it had petitioned that court to do.

But all other considerations aside, the circuit court had jurisdiction to pass judgment on the sufficiency of that petition for removal, and in doing so the provisions of the Act of March 13, 1907, in no sense entered into the consideration. It being a question within the jurisdiction of the circuit court, if its decision was right no complaint could be made, if it was wrong it was mere error, and in either event the judge was not amenable to the writ of prohibition.

III. As to Scott Wilson, the plaintiff in the suit in the circuit court, the chief point in his motion to quash is that on the case stated in relator's petition in this court a clear case was made for the removal of his cause to the Federal court, yet by this proceeding it is tied up in the State Circuit Court which cannot

proceed to trial with it, and is withheld from the Federal court where it could be tried and determined. There are other points in the motion, but that is sufficient. Wilson is not concerned with the question of the constitutionality of the Act of March 13, 1907, he is concerned only with his own case and the trial thereof; if trial cannot be had in the State court then he wants it sent to the Federal court where it can be tried. Counsel for relator in his brief says that since no order of the Newton Circuit Court was necessary for the removal either the relator or Wilson could have had a transcript of the record in the case made and filed in the Federal court and thus have put that court in possession of the case. But the learned counsel is mistaken in that. It is true no order of removal was necessary, but after the order of this court prohibiting the judge and Wilson from taking any step in the case, the latter could not without incurring the risk of violating that order have moved in the matter.

But in any event what has Wilson done to lay him liable to a writ of prohibition? He brought his suit in the Newton Circuit Court, as he had a right to do, and that is all that he has done. His demurrer and motion to quash should be sustained.

IV. Can the writ of prohibition go against the Secretary of State?

*a.* He is an executive officer and if he should refuse to do what he ought to do a mandamus may reach him, or if he should attempt to do what he ought not do, he is amenable to injunction, but he is amenable to a writ of prohibition only, if at all, when he assumes to exercise a judicial function. A ministerial officer has no right to pronounce an act of the General Assembly unconstitutional and so disobey it. The power to declare a statute enacted by the lawmaking department of the State unconstitutional is entrusted only to the judicial department of the State government, is

n ot only judicial in its character but it is of the highest judicial character. Such is the respect due to the authority of the General Assembly to make laws, that a duly enacted statute will not be declared unconstitutional, even by the Supreme Court, unless its invalidity appears beyond a reasonable doubt. [Ewing v. Hoblitzelle, 85 Mo. 64; State ex rel. v. Aloe, 152 Mo. 466.]

Obedience to the plain mandate of a statute by a ministerial officer is in no sense a judicial determination or adjudication on his part that the statute is constitutional; he would have no right to disobey it on the ground that in his opinion it is unconstitutional. To what confusion would it lead if every ministerial officer in the State was endowed with authority, or should assume authority, to pronounce, in advance of any judicial decision, that an act of the General Assembly was unconstitutional and for that reason he would disobey it.

In State v. Douglass, 50 Mo. 593, l. c. 597, Judge Wagner, speaking for the court, quoted with approval the following from a Connecticut decision: "Every l.w of the Legislature, however repugnant to the Constitution, has not only the appearance and semblance of authority, but the force of law. It cannot be questioned at the bar of private judgment, and, if thought unconstitutional, resisted; but must be received and obeyed as, to all intents and purposes, law, until questioned in and set aside by the courts."

In considering this subject we ought to keep in mind the difference in consequence between the act of a ministerial officer in obeying the mandate of a statute and his act in disobeying it. If he yields obedience to the law it can never be said that he has assumed the judicial function of passing judgment on its validity, but if he refuse to obey it on the ground that in his opinion it is unconstitutional, he lays himself liable to the imputation of assuming a judicial function. There are many duties imposed by various statutes on the

Secretary of State which he is daily performing, and it has never been imputed to him that in so doing he has usurped the functions of the courts and adjudged those statutes to be in harmony with the Constitution of the United States and of the State. We have been referred to no case and have seen none where it was charged that in yielding obedience to the law the ministerial officer usurped judicial functions. But if an officer refuses obedience to a statute on the ground that in his opinion it is unconstitutional a different case is presented. We do not say that even then a writ of prohibition will go against him, because mandamus is the appropriate remedy. Even in such case it has been held by many courts that the officer, when proceeded against by mandamus to compel him to obey the statute, could not defend his conduct of refusal by pleading the unconstitutionality of the statute.

In a mandamus proceeding against a county clerk the Supreme Court of Illinois, addressing its words to the offending officer said: "The law under which this additional tax was imposed had passed the Legislature under all the forms of the Constitution, and had received executive sanction, and became, by its own intrinsic force, the law to you, to every other public officer in the State, and to all the people. You assumed the responsibility of declaring the law unconstitutional, and at once determined to disregard it, to set up your own judgment as superior to the expressed will of the Legislature, asserting, in fact, an entire independence thereof. This is the first case in our judicial history in which a ministerial officer has taken upon himself the responsibility of nullifying an act of the Legislature for the better collection of the public revenue, of arresting its operation, of disobeying its behests, and placing his own judgment above legislative authority expressed in the form of law. . . . To allow a ministerial officer to decide upon the validity of a law, would be subversive of the great

objects and purposes of government, for if one such officer may assume infallibility, all other like officers may do the same, and thus an end be put to civil government, one of whose cardinal principles is, subjection to the laws. . . . Had the property owners, who were subjected to this additional tax, considered the law unconstitutional, they could in the proper courts have tested the question, and it was their undoubted right so to do. Your only duty was obedience.'' [The People v. Salmon, 54 Ill. 39, l. c. 45-46.]

The Supreme Court of Louisiana in a very elaborate opinion reviewed many authorities and decided that the defendants, the State Auditor and State Treasurer, could not in a mandamus proceeding to compel them to warrant and pay certain claims in obedience to an act of the General Assembly, defend their refusal to do so on the ground that the act of the Legislature was unconstitutional. [State ex rel. v. Heard, 47 La. Ann. 1679.] In the concluding part of the opinion in that case the court said: ''In mandamus proceedings against a public officer, involving the performance of official duty, nothing can be inquired into but the question of duty on the face of the statute and the ministerial character of the duty he is charged to perform. After a careful investigation of the authorities, we feel fully confirmed in the correctness of the conclusions we arrived at in State ex rel. Nicholls v. Shakespeare, and other cases, to the effect that executive officers of the State government have no authority to decline the performance of purely ministerial duties which are imposed upon them by a law, on the ground that it contravenes the Constitution. Laws are presumed to be, and must be treated and acted upon by subordinate executive functionaries as constitutional and legal, until their unconstitutionality or illegality has been judicially established; for in a well regulated government obedience to its laws by executive officers is abso-

234 Sup.—23

lutely essential and of paramount importance. Were it not so, the most inextricable confusion would inevitably result, and 'produce such collisions in the administration of public affairs as to materially impede the proper and necessary operations of government.' 'It was surely never intended that an executive functionary should nullify a law by neglecting or refusing to execute it.' The result of this conclusion is, that the respondents are without. right to urge the unconstitutionality of the concurrent resolution which is involved.''

The Supreme Court of Nebraska has held that in a mandamus suit against a ministerial officer to compel him to perform a duty imposed on him by a statute, he may justify his refusal on the plea that the statute is unconstitutional, and that the courts will not compel a ministerial officer to obey the mandate of an unconstitutional statute, then the court says: ''But the courts themselves will enforce a statute unless it is clearly repugnant to the Constitution, and in discharging the functions of their offices ministerial officers should, of course, exercise the greatest caution on such questions. A doubt as to the validity of a statute would not justify them disregarding it. The peace of the community, the orderly conduct of government, require that only in clear cases of unconstitutionality should they refuse obedience to legislative acts. They always disregard them at their peril; but when they do disregard them and the question is presented to the court as to whether or not obedience will be compelled, the question of the validity of the act is presented, and obedience will not be compelled if the act is unconstitutional, because in that case it is no law and imposes upon no one any duty.'' [Van Horn v. State, 46 Neb. l. c. 83.]

The Louisiana case above quoted is reported also in 47 L. R. A. 512 and in a note to that case the Nebraska case is also quoted. In a very elaborate note

the editor reviews many cases, and concludes as fol-
lows: ''From the above decisions it is apparent that
there is no theory which will reconcile all the conflict.
There is running through the decisions, however, a
thread which would furnish a logical and satisfactory
rule upon the question if finally adopted. That is, that
statutes are generally presumed valid, and ministerial
officers must treat them as such until their invalidity
is established, but that if the nature of the office is
such as to require the officer to raise the question, or
if his personal interest is such as to entitle him to do so,
he may contest the validity of the statute in a manda-
mus proceeding brought to enforce it. In other cases
he must perform his duty as the statute requires, and
leave those whose rights are affected by it to take
steps to annul it.''

We have not quoted from the above cases to show
that a ministerial officer when called into court to an-
swer for his refusal to obey the mandate of a statute
cannot plead in justification or excuse for his refusal
that the statute is unconstitutional, for no such ques-
tion is in this case, but we have cited those cases to
sustain the proposition that it is the duty of a minis-
terial officer to obey the statute without question, and
in so doing he is not arrogating to himself any judicial
function. There is no conflict between any of the
cases on that point.

In a very recent case, State ex rel. Wiles v. Wil-
liams, 232 Mo. 56, which was a mandamus suit against
a county treasurer to compel him to pay a certain war-
rant that had been issued by the clerk of the county
court in payment of the salary of the plaintiff, who
was the prosecuting attorney of that county, the de-
fendant by his answer stated that the statute under
which the warrant was drawn was unconstitutional
and the point was raised in this court that he had no
right to plead such a defense, but this court in a very
carefully considered opinion by WOODSON, J., allowed

the defense. It was in that opinion said that whilst ordinarily to allow that defense was contrary to the great weight of authorities, many of which were arrayed in the opinion, yet under the peculiar facts of that case the ordinary rule would be departed from. It appeared in that case that the county court of that county had been admonished that the statute was unconstitutional, and had applied to the Attorney-General for his opinion and the Attorney-General gave his opinion in writing holding that the statute was unconstitutional, whereupon the county court gave notice thereof to the county treasurer and made an order and caused it to be entered on its record, ordering him not to pay the warrant and that if he did so he would not be allowed credit for the same in his account with the county.

As said by the Illinois court it is the duty of the ministerial officer to obey the statute without question, and if it impinges the rights of any one who deems it unconstitutional such an one may go into court for an injunction to prevent its threatened enforcement.

In High on Ex. Legal Remedies (2 Ed.), sec. 770, it is said: "And it is a principle of universal application, and one which lies at the very foundation of the law of prohibition, that the jurisdiction is strictly confined to cases where no other remedy exists, and it is always a sufficient reason for withholding the writ that the party aggrieved has another and complete remedy at law."

The case of Herndon v. Railroad, 218 U. S. 135, which is the case hereinabove referred to in which it was held by the United States Supreme Court that the Act of March 13, 1907, was unconstitutional, was a suit brought by the railroad company in the United States circuit court against Herndon, the prosecuting attorney of Clinton county, and John E. Swanger, the then Secretary of State, wherein it was alleged that the then Secretary of State had threatened to do just what

the petition in the case at bar says the present Secretary of State threatens to do, that is, obey the statute, and on that statement the injunction was issued. The statute in question was aimed not only against the removal of a cause to a Federal court, but also against the bringing of a suit in a Federal court, and the consequence in each case was the same. It never occurred to anyone in that case to say that the then Secretary of State by purposing to obey the statute was assuming to exercise a judicial function, or that the statute essayed to confer judicial authority on him, or that a writ of prohibition could go against him.

b. In the case at bar there is no connection between the action that the circuit court of Newton county might have taken in reference to the petition for removal of the Scott Wilson suit to the Federal court and the action that the Secretary of State might have taken in case the removal had been ordered; as for example like the action of a sheriff in executing the order of a court. The court had nothing to do with the consequence that might result from its order directing a removal of the cause to the Federal court, it had nothing in that respect to do with the Missouri statute in question, it could look only to the act of Congress, it would not in such case give any order to the Secretary of State; and on the other hand if because of the removal the officer had undertaken to revoke the relator's license it would in no sense be in obedience to the order of the court but to that of the mandate of the statute. Take the converse of the proposition; if, after the order of removal, the officer refused to revoke the relator's license, could he be brought before that court on a charge of disobedience of its order?

It was a misjoinder of parties to unite the supposed cause of action against the judge with that against the Secretary of State in the same petition.

The writ of prohibition is denied. All concur.