THE STATE EX REL. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. CHARLES U. BECKER, Secretary of State.—41 S. W. (2d) 188.

Court en Banc, July 29, 1931.

*Luther Burns, Henry S. Conrad, L. E. Durham* and *Hale Houts* for relator.

*Stratton Shartel,* Attorney-General, and *Walter E. Sloat,* Assistant Attorney-General, for respondent.

HENWOOD, J.—This is an original proceeding in mandamus, by which relator seeks to compel respondent to issue to it a renewal of its license to do business in this State for the period of its charter as extended under the laws of Illinois and Iowa, upon the payment of a tax based on the increase in its capital stock from $140,000,000 to $170,000,000 (and not based on its entire capital stock, as demanded by respondent), and upon compliance in other particulars with the laws of this State relating to such matters.

Our alternative writ has been issued, and respondent has filed his return thereto, and relator has filed a motion for judgment on the pleadings.

Relator alleges, in its petition, that it was duly incorporated on June 2, 1880, under the laws of Illinois and Iowa; that its charter provided it should continue for fifty years, and that, thereafter, its charter could be extended as provided by the laws of those states; that its original capital stock was $50,000,000; that its capital stock was increased to $75,000,000 in 1902, and to $140,000,000 in 1921; that it has paid to this State all taxes and fees due on said increases of its capital stock; that its charter was filed in this State on June 14, 1880; that, on November 22, 1902, it was duly authorized to do business in this State, and has ever since operated in this State; that, on the date of its original incorporation, June 2, 1880, it became the owner of various lines of railroad in this State, built in 1869, 1870 and 1871; that said lines of railroad have continued to be and still are its property, and are now operated by it; that, in May, 1930, under the provisions of its charter and the laws of Illinois and Iowa, its charter was duly extended for a period of fifty years; that, on or about June 3, 1930, it filed with respondent certificates of the secretaries of state of the states of Illinois and Iowa, in which the extension of its charter and the increase of its capital stock from $140,000,000 to $170,000,000 are

duly certified; that, at the same time, it filed with respondent the affidavit of its principal officer, showing the proportion of said increase of its capital stock which is represented by property located and business transacted in this State, and duly tendered to respondent the tax due this State on said increase of its capital stock; that, notwithstanding its compliance with the laws of this State, respondent refused to renew or extend its license to do business in this State, and still refuses to do so, on the ground that, under the laws of this State, it is his duty to exact from it the payment of a tax based on its entire capital stock; that, by Section 9792, Revised Statutes 1919, it was provided that every company incorporated for the purpose of gain, under the laws of any other state, and doing business within this State, should file, in the office of the Secretary of State, its charter or articles of incorporation, duly authenticated by the proper authority, together with a sworn statement, setting forth the business in which it was engaged or proposed to carry on in this State, and a sworn statement of the proportion of its capital stock which was represented by property located and business transacted in this State; that it was further provided by said statute, that, upon the expiration of a license issued to a foreign corporation, a new certificate and license might be issued, for a period of fifty years, if its corporate existence warranted such extension, and that the statutory requirements relating to the payment of an incorporation tax and fees should not apply to railroad companies which had previously built their lines of railway into or through this State; that said statute was repealed in 1927 (Laws 1927, p. 387), and new Section 9792 was enacted, wherein it is provided (Laws 1927, p. 390) that every company incorporated for the purpose of gain, under the laws of any other state, and doing business within this State, shall file, in the office of the Secretary of State, a copy of its charter or articles of association, duly authenticated, together with a sworn statement, setting forth the business in which it is engaged or which it proposes to carry on in this State, and a sworn statement of the proportion of its capital stock which is represented by its property located and business transacted in this State; and that, upon the expiration of the license issued to a foreign corporation, a new certificate and license may be issued, for a period limited in its articles of association, and that the statutory requirements relating to the payment of an incorporation tax and fees shall not apply to railroad companies which have heretofore built their lines of railroad into or through this State; that the refusal of respondent to grant to it a new license to do business in this State for the period of its extended charter is unlawful and arbitrary, and deprives it of rights and privileges granted by and under the laws of this State, and is violative of Articles V and XIV of the Amendments to the Constitution of

the United States, providing that no person shall be deprived of property without due process of law, and of Section 30 of Article II of the Constitution of Missouri, providing that no person shall be deprived of property without due process of law; that the extension of its charter did not create a new corporation, but merely continues its existence under its original charter, for the period aforesaid, and that, except as to the increase of its capital stock from $140,000,000 to $170,000,000, it falls within the exemption of Section 9792, Revised Statutes 1919, and of new Section 9792 of the Act of 1927 (Laws 1927, p. 390), relating to the payment of an incorporation tax and fees; and that the ordinary proceedings at law afford it no remedy in the premises. All of said allegations of relator's petition are set forth at length in the alternative writ.

Respondent, in his return, admits all allegations of fact recited in the alternative writ; and denies that his refusal to issue to relator a new license to do business in this State is unlawful or arbitrary, denies that it is violative of Article V or Article XIV of the Amendments to the Constitution of the United States or Section 30 of Article II of the Constitution of Missouri, and denies that he has any right to issue to relator a new license upon the payment of a tax based on the increase of its capital stock from $140,000,000 to $170,-000,000; and avers that the part of new Section 9792 of the Act of 1927 (Laws 1927, p. 390) which exempts from the payment of an incorporation tax and fees railroad companies which have heretofore built their lines of railway into or through this State is unconstitutional in that it grants to foreign corporations an exemption not allowed to domestic corporations and imposes upon the same class of subjects taxes which are not uniform, in violation of Section 3 of Article X of the Constitution of Missouri.

The pertinent parts of Section 9792, Revised Statutes 1919, as reenacted in 1927 (Laws 1927, pp. 390-392), now Section 4598, Revised Statutes 1929, read as follows:

"Every company incorporated for the purpose of gain under the laws of any other state, territory or country, now or hereafter doing business within this State, shall file in the office of the secretary of state a copy of its charter or articles of association, duly authenticated by the proper authority, together with a sworn statement under its corporate seal, particularly setting forth the business of the corporation which it is engaged in carrying on, or which it proposes to carry on in this State; and the principal officer or agent in Missouri shall make and forward to the secretary of state, with the affidavits required, a statement sworn to of the proportion of the authorized capital stock of said corporation which is represented by its property located and business transacted in Missouri, . . . Such corporation shall be required to pay into the state treasury upon the pro-

portion of its authorized capital stock represented by its property and business in Missouri, incorporating tax and fees equal to those required of similar corporations formed within and under the laws of this State, with an addition of ten dollars as a fee for issuing the license authorizing it to do business in this State. Upon compliance with these provisions by the corporation the secretary of state shall give a certificate that said corporation has duly complied with the law, and is authorized to engage only in the business set out in the statement filed with its charter. . . . *Provided,* that upon the expiration by limitation of the license heretofore issued to a foreign corporation a new certificate and license may be issued for a period limited in its articles of association: . . . *Provided, that the requirements of this article to pay incorporation tax and fee shall not apply to railroad companies which have heretofore built their lines of railway into or through this state:* . . .'' (Our italics.)

As shown by respondent's return to the alternative writ, his only defense of his refusal to issue to relator a renewal of its license to do business in this State is the alleged unconstitutionality of the provision of the statute (quoted above) which exempts relator from the payment of the incorporation tax and fee required of all domestic and foreign corporations except ''railroad companies which have heretofore built their lines into or through this state.''

It is well settled in this State and in a great majority of our sister states that, as a general rule, a ministerial officer cannot defend his refusal to perform a duty prescribed by a statute on the ground that such statute is unconstitutional. [State ex rel. v. Williams, 232 Mo. 56, 133 S. W. 1; State ex rel. v. Johnston, 234 Mo. 338, 137 S. W. 595, 30 A. L. R. 378-387, and cases cited.]

After reviewing adjudications in other states, in State ex rel. v. Williams, supra, Judge WOODSON said: ''The consensus of opinion is, that constitutionality of a statute imposing ministerial duties upon a ministerial officer cannot be raised by him in a mandamus proceeding instituted for the purpose of compelling him to perform those duties. The reason assigned is, that since such an officer has no personal interest involved, to tolerate his objections to the validity of the law would lead to delays and endless confusion in the administration of the law.''

In State ex rel. v. Johnston, supra, Judge VALLIANT made the following observations: ''In considering this subject we ought to keep in mind the difference in consequence between the act of a ministerial officer in obeying the mandate of a statute and his act in disobeying it. If he yields obedience to the law it can never be said that he has assumed the judicial function of passing judgment on its validity, but if he refuse to obey it on the ground that in his opinion it is unconstitutional, he lays himself liable to the imputation of assuming

a judicial function. There are many duties imposed by various statutes on the Secretary of State which he is daily performing, and it has never been imputed to him that in so doing he has usurped the functions of the courts and adjudged those statutes to be in harmony with the Constitution of the United States and of the State. We have been referred to no case and have seen none where it was charged that in yielding obedience to the law the ministerial officer usurped judicial functions. But if an officer refuses obedience to a statute on the ground that in his opinion it is unconstitutional a different case is presented. . . . In such case it has been held by many courts that the officer, when proceeded against by mandamus to compel him to obey the statute, could not defend his conduct of refusal by pleading the unconstitutionality of the statute.''

In State ex rel. v. Heard, 47 La. Ann. 1679, a proceeding in mandamus to compel the State Auditor to issue, and the State Treasurer to pay, certain warrants, it was held that those officers could not defend their refusal to perform said duties on the ground that the legislative act authorizing the issuance and payment of said warrants was unconstitutional. In that case, the court said:

''In mandamus proceedings against a public officer, involving the performance of official duty, nothing can be inquired into but the question of duty on the face of the statute, and the ministerial character of the duty he is charged to perform.

''After a careful investigation of the authorities, we feel fully confirmed in the correctness of the conclusions we arrived at in Nicholls v. Shakspeare, and other cases, to the effect that the executive officers of the State Government have no authority to decline the performance of purely ministerial duties which are imposed upon them by a law, on the ground that it contravenes the Constitution.

''Laws are presumed to be, and must be treated and acted upon by subordinate executive functionaries as constitutional and legal, until their unconstitutionality or illegality has been judicially established, for, in all well regulated government, obedience to its laws by executive officers is absolutely essential, and of paramount importance. Were it not so, the most inextricable confusion would inevitably result.''

''A court will not listen to an objection made to the constitutionality of a statute by a party whose rights it does not affect, and who has, therefore, no interest in defeating it. . . . A party who seeks to have an act of the Legislature declared unconstitutional, must, . . . not only show that he is or will be injured by it, but he must also show how and in what respect he is or will be injured and prejudiced by it.'' [County Commissioners of Franklin County v. State ex rel. Patton, 24 Fla. l. c. 58.]

"To allow mere ministerial officers, who have no direct personal interest in the matter, to refuse to perform an act clearly pointed out and made their official duty, by a statute, on the ground that the performance of the act would violate the Constitution, would be establishing a very dangerous precedent, and one not warranted by the authorities. It would be deciding a constitutional question, affecting the rights of third parties, at the instance of officers whose duties are merely ministerial, and who have no direct interest in the question, and cannot in any event be made responsible." [Thoreson v. State Board of Examiners, 19 Utah, 1. c. 31.]

To like effect are the decisions in Commonwealth ex rel. v. James, 135 Pa. St. 480, The People ex rel. v. Salomon, 54 Ill. 39, Smyth v. Titcomb, 31 Me. 272, and other cases cited in 30 A. L. R. 379-380.

There are certain exceptions to the general rule, but respondent has pleaded no facts which bring this case within any of such exceptions. In this connection, see 30 A. L. R. 387-397, and cases cited, including State ex rel. v. Williams, supra.

It follows that relator's motion for judgment on the pleadings should be sustained and a peremptory writ awarded. It is so ordered. All concur.