STATE OF MISSOURI, at the Relation of LYNN M. WULFING, JANE STRIBLING and DOROTHY MOORE, Relators, v. JOHN E. MOONEY, GEORGE F. HEEGE, LYON MEYER and EDWARD HEIL, Constituting the Board of Election Commissioners of the County of St. Louis, Missouri, Respondents.

STATE OF MISSOURI, at the Relation of THOMAS DUNNE and JAMES McNARY, Relators, v. JOHN E. MOONEY, LYNN MEYER, GEORGE F. HEEGE and EDWARD HEIL, Constituting the Board of Election Commissioners of St. Louis County, Missouri, and WALTER H. TOBERMAN, Secretary of State, Respondents, Nos. 43107 and 43108—247 S. W. (2d) 722.

Court en Banc, March 26, 1952.

*Luther Ely Smith, Jr., Harold C. Hanke* and *Victor B. Harris* for relators in Case No. 43107.

1130

*Peter T. Barrett* and *Wm. J. Becker* for relators in Case No. 43108.

*Robert Mass, John J. McAtee, C. W. Detjen* and *Herbert C. Funke* for respondents in Case No. 43107.

*Robert Mass, John J. McAtee, C. W. Detjen,* and *Herbert C. Funke* for respondents in Case No. 43108.

1134

TIPTON, J.—These cases are original actions in prohibition filed in this court. They were consolidated for the purpose of argument. The issues in these cases are almost identical and can be decided in one opinion.

Following the report of the 1950 decennial census of the United States to the President, the Governor appointed a commission of five Democrats and five Republicans to reapportion the 34 senatorial districts of the state, pursuant to section 7, article III of our 1945 Constitution. Acting under sections 5 and 7 of that article, this commission apportioned three senatorial districts to St. Louis County. Previously St. Louis County had only two senators.

When a county is entitled to more than one senator, then under section 8, article III of our Constitution it is the duty of the county court to "divide the county into districts of contiguous territory, as compact and nearly equal in population as may be, in each of which one senator shall be elected." However, St. Louis County is now governed by a special charter, pursuant to section 18 of article VI of our Constitution, and under this charter the county council exercises all the powers of a county court. On February 9, 1952 the county council enacted Ordinance No. 159, dividing the county into three senatorial districts. Thereafter the county council discovered that a township had been omitted from the redistricting plan set up by that ordinance and on March 1, 1952 it adopted Resolution No. 27 which divided St. Louis County into three senatorial districts, substantially the same as those provided for in Ordinance No. 159, the

only difference being that the excluded township was included in the 13th senatorial district.

The respondents are members of the board of election commissioners of St. Louis County. Under sections 113.010-113.420, RSMo 1949, it is the board's duty to receive declarations for nomination for senator from the senatorial districts in St. Louis County and to conduct primary and general elections.

The respondents admit they will receive declarations for nomination for state senator from the three senatorial districts set forth in Resolution No. 27 and will conduct senatorial elections thereunder.

Relators contend that these respondents are without jurisdiction to receive declarations for nomination from the districts as laid out by Resolution No. 27 and to conduct senatorial elections pursuant to this resolution because (1) the districts are not contiguous territory, are not as compact and nearly equal in population as may be and, therefore, violate section 8, article III of ▇▇▇ our Constitution; and (2) under the county charter these districts should have been laid out by ordinance and not by a resolution of the county council.

Is prohibition the proper remedy to determine these issues?

▇ It is conceded by all parties that the redistricting of St. Louis County into senatorial districts is a legislative function. With this we agree. State ex rel. Barrett v. Hitchcock, 241 Mo. 433, 146 S. W. 40.

Jurisdiction of this court is limited by sections 3 and 4 of article V of our Constitution. Section 3 gives this court exclusive appellate jurisdiction in certain cases, while under section 4 this court has original jurisdiction in remedial writs in exercising superintending control over inferior courts and tribunals.

▇ The preventative power of the writ of prohibition is not limited to the supervision of courts but may, where the action sought to be prohibited is judicial in its nature, be exercised against public officers. It will not lie against judicial officers if the act sought to be prevented is not in itself judicial. State ex rel. United States Fidelity & Guaranty Co. v. Harty, Superintendent of Insurance, 276 Mo. 583, 208 S. W. 835. Therefore, if the acts of the respondents in receiving declarations for nomination for state senator from the three senatorial districts established by Resolution No. 27 and the holding of the primary and general elections are judicial, we can control the action of the respondents by our writ; but if these acts are ministerial as contended by respondents, we cannot.

▇ This question was before this court in the case of State ex rel. Missouri and North Arkansas Railroad Co. v. Johnston, Judge, and Roach, Secretary of State, 234 Mo. 338, 137 S. W. 595. That was an action in prohibition to prevent the secretary of state from enforcing a statute which provided that if a railroad company, chartered under the laws of another state and admitted to do business in this state,

should remove a suit brought against it to the federal court from the courts of this state, or if the railroad brought a suit in the federal courts against a citizen of this state, the certificate of authority of the railroad company to carry freight and passengers from one point in this state to another point in this state should be forthwith revoked by the secretary of state.

While that case was pending in this court, the Supreme Court of the United States, in the case of Herndon v. Chicago, R.I. & P.R.R. Co., 218 U. S. 135, held the act was unconstitutional as it was in conflict with the Constitution of the United States. Yet this court said in ruling that case (the Roach case) supra, 234 Mo. l. c. 347: "The act having been declared unconstitutional it remains now for this court to decide whether at the time of filing the petition herein the relator under the showing made in its petition, was entitled to a writ of prohibition. · Unquestionably if the relator's rights were threatened under the pretext of an unconstitutional act it was entitled to judicial protection in some form, but the question is, was it entitled to a writ of prohibition?"

We held in that case that a writ of prohibition will not lie to prohibit the secretary of state from obeying a statute, whether or not it be constitutional.

"*Obedience to the plain mandate of a statute by a ministerial officer is in no sense a judicial determination or adjudication on his part that the statute is constitutional; he would have no right to disobey it on the ground that in his opinion it is unconstitutional.* To what confusion would it lead if every ministerial officer in the State was endowed with authority, or should assume authority, to pronounce, in advance of any judicial decision, that an act of the General Assembly was unconstitutional and for that reason he would disobey it.

"In State v. Douglass, 50 Mo. 593, l. c. 597, Judge Wagner, speaking for the court, quoted with approval the following from a Connecticut decision: 'Every law of the Legislature, however repugnant to the Constitution, has not only the appearance and semblance of authority, but the force of law. It cannot be questioned at the bar of private judgment, and, if thought unconstitutional, resisted; but must be received and obeyed as, to all intents and purposes, law, until questioned in and set aside by the courts.'

"In considering this subject we ought to keep in mind the difference in consequence between the act of a ministerial officer in obeying the mandate of a statute and his act in disobeying it. *If he yields obedience to the law it can never be said that he has assumed the judicial function of·passing judgment on its validity, but if he refuse to obey it on the ground that in his opinion it is unconstitutional, he lays himself liable to the imputation of assuming a judicial function.* There are many duties imposed by various statutes on the Secretary of

State which he is daily performing, and it has never been imputed to him that in so doing he has usurped the functions of the courts and adjudged those statutes to be in harmony with the Constitution of the United States and of the State. We have been referred to no case and have seen none where it was charged that in yielding obedience to the law the ministerial officer usurped judicial functions.'' (Italics ours.) State ex rel. Mo. & North Arkansas RR. Co. v. Johnston, supra, 234 Mo. l. c. 351-352.

See also our recent case of State ex rel. Board of Mediation v. Pigg, 362 Mo. 798, 244 S. W. 2d 75, which holds that a public official may not question the constitutionality of a statute unless he is personally affected by the statute. To the same effect is the case of Stribling v. Jolley, 362 Mo. 995, 245 S. W. 2d 885.

By their return, these respondents state that they will receive declarations of candidates for nomination for senator from the three districts set out in Resolution No. 27 and that they will conduct all elections held in St. Louis County. In so doing they are following their statutory duty. See sections 113.010-113.420, supra.

Under these circumstances these respondents' acts are ministerial and not judicial. Therefore, respondents' acts cannot be controlled by prohibition assuming Resolution No. 27 is unconstitutional because it violates section 8, article III of our Constitution. State ex rel. Mo. & North Arkansas R. R. Co. v. Johnston, supra.

Relators rely upon our cases where we have prohibited election boards from doing certain acts. We will review some of them.

In the case of State ex rel. Goldman v. Hiller et al., Election Commissioners, 278 S.W. 708, two members of the election board of Kansas City were threatening to recount the ballots in certain precincts in a city election under the provisions of an act of 1921, but that act had been superseded by a constitutional amendment adopted in 1924. We made our preliminary rule as to recounting the ballots absolute.

In the case of State ex rel. Hollman v. McElhinney et al., Board of Election Commissioners, 315 Mo. 731, 286 S.W. 951, the board of election commissioners in St. Louis County were threatening to recount the votes in certain precincts in a primary election under the 1921 act. We followed the ruling of the Goldman case and issued our peremptory writ.

In the case of State ex rel. Bates v. Remmers et al., Board of Election Commissioners, 325 Mo. 1175, 30 S.W. 2d 609, the board was attempting to print the name of Sylvester A. Nangle as a candidate upon the Republican ticket for the nomination for state senator in the 32nd senatorial district, which district was located wholly within the city of St. Louis. Nangle had filed his declaration with the secretary of state of Missouri who certified it to respondents. Section 4830 R.S. 1919 (now section 120.370 RSMo 1949) required the declarations for

nomination for state senator to be filed with the election board of St. Louis and not with the secretary of state as that senatorial district was wholly within the city of St. Louis. We ruled the respondents were not complying with the statute and made our rule absolute.

In the case of State ex rel. Stone v. Thomas et al., Board of Election Commissioners, 349 Mo. 22, 159 S.W. 2d 600, the election board of Kansas City had changed the boundaries of certain precincts but not the ward, and attempted to place new judges and clerks in the precincts in place of previously ▆▆▆ appointed judges and clerks whose terms had not expired. The statutes required judges and clerks to live in the wards but not in the precincts and they were appointed for a term of four years. We held the respondents had not complied with the statutes and were acting in a judicial capacity in construing the statutes by giving them the effect of abolishing the offices of the judges and clerks of election held by relators.

In the above cases the election boards in each particular instance were not applying the applicable law to the question they had before them and we issued our writs of prohibition for that reason. On the other hand, in the case at bar the board of election commissioners were complying with the applicable statutes and were therefore acting in a ministerial capacity. Therefore, the above cases do not lend any support to relators' contentions that prohibition is a proper remedy to determine if the questioned senatorial districts comply with section 8, article III of our Constitution.

In the case of State ex rel. Davis v. Ramacciotti et al., Board of Election Commissioners, 193 S.W. 2d 617, we denied application for prohibition because prohibition is a discretionary writ. This is one of the rare instances where we stated our reasons for denying an application for an original extraordinary writ. There is an intimation that if the application had been presented earlier we would have issued our preliminary rule, but there is nothing in the opinion that could be construed to mean we would have held that prohibition against the election commissioners is the proper remedy to test the constitutionality of a senatorial redistricting issue. That opinion is of no value in determining the issues before us.

The case of State ex rel. Preisler v. Woodward, 340 Mo. 906, 105 S.W. 2d 912, does not aid the relators for the reason that that was a mandamus action.

We hold that prohibition under the facts in this record is not the proper remedy to determine if the three senatorial districts in question comply with section 8 of article III of our Constitution.

The relators contend that the redistricting should have been done by an ordinance of the county council instead of by a resolution of that body. We have already held the respondents, as members of the board of election commissioners of St. Louis County, are a ministerial board.

A ministerial officer or a ministerial board that obeys a statute, an ordinance or a resolution does not thereby determine its validity and prohibition does not lie to prevent the officer or board from obeying an invalid statute, ordinance or order. State ex rel. Mo. & North Arkansas R. R. Co. v. Johnston, supra.

In Case No. 43,108 we are also asked in the petition to give a declaratory judgment as to the illegality of the three senatorial districts. We have already shown that this court has original jurisdiction only in the granting of remedial writs. A declaratory action is not a remedial writ and our jurisdiction in such action is appellate only.

It follows from what we have said that our preliminary rule in prohibition should be discharged. It is so ordered. All concur.